Tom CUELLAR, Plaintiff-Appellant,

v.

TEXAS EMPLOYMENT COMMISSION and Larco Leasing, Inc., Defendants-Appellees.

No. 86–1333.

United States Court of Appeals, Fifth Circuit.

Aug. 31, 1987.

Alpha Hernandez, Texas Rural Legal Aid, Inc., R.W. Rodriguez, Del Rio, Tex., for plaintiff-appellant.

Susan F. Eley, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellees.

Before CLARK, Chief Judge, GOLDBERG and GEE, Circuit Judges.

GOLDBERG, Circuit Judge:

Plaintiff Tom Cuellar appeals from a Fed.R.Civ.P. 12(b)(6) dismissal of his complaint, which alleges a deprivation of due process in the procedures utilized by a state administrative appellate referee during an unemployment benefit disqualification hearing. Finding that the complaint may allege sufficient facts to ground a constitutional claim, we vacate the dismissal order and remand to the district court for further consideration in light of this opinion and, if requested, to permit Cuellar to amend his complaint in the interests of justice.

1. Factual Background

Because this case is before us in a summary posture, the record is less than adequate. Conspicuous in its absence is any written or taped transcript of the administrative proceedings at issue. Notwithstanding, we accept as true the allegations of Cuellar's complaint, supplemented by clarification in appellate pleadings and at oral argument, to determine whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see McLain v. Real Estate Bd., Inc.,* 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (the *Conley* rule is "axiomatic").

Cuellar was employed by Defendant Larco Leasing, Inc. (Larco) in Del Rio, Texas as a driver foreman until October 1984.

Cuellar had suffered from medical problems, and had been reassigned in August to perform mechanic duties in Larco's yard. At some later point, during the last day he worked, the owner of Larco, Frank H. Larson, instructed the van dispatcher and assistant manager, Eloy Salazar, to have a conversation with Cuellar. Larson apparently testified, in the administrative hearing at issue, that he had instructed Salazar to tell Cuellar that Cuellar could not take the van home with him. Cuellar apparently testified that he was told by Salazar that he could not use the van at all. When Cuellar heard this, he told Salazar that he could not work, because he could not carry a heavy tool box without the van. He left work because he was denied the use of the vehicle, and told Salazar to tell Larson that he would be available to return to work, and should be contacted, if Larson were to change his mind about not permitting Cuellar to use the van at work.

On November 8, 1984, Cuellar applied for unemployment compensation benefits at the local Del Rio Texas Employment Commission (TEC) office. Because Cuellar listed Amistad Transfer and Storage Company as his employer, rather than Larco Leasing (which Larson also owned and which operated from the same address), he was denied benefits. Cuellar appealed to a state referee, who found Cuellar's claim to be valid.

On January 20, 1985, Cuellar was approved for benefits by the local TEC office. Larco appealed the determination on January 25, 1985. A hearing was scheduled before a different referee on March 14, 1985, at which Cuellar, his representative, and Larson appeared. The notice of hearing stated:

> The parties are notified that this hearing may involve the taking of evidence on any question having a bearing on the claimant's rights to benefits up to the time of the hearing. In addition to resolving issues developed in the hearing, the following specific issues will be covered:
> Claimant's separation from work.
> If claimant's discharge occurred while absent from work due to illness, or if a claimant resigned from work upon the advice of a physician, claimant should present a physician's statement to medically verify claimant's physical condition. Testimony alone as to a physical condition may be insufficient.
> Chargeability of benefits paid to claimant, which are based on wages from this employer [sic]. If employer is a reimbursing employer, benefits paid to claimant based on wages from the employer shall be billed to the employer.

At the hearing, Larson apparently produced an affidavit of Salazar, who was still in Larson's employ. The affidavit on its face confirms that Larson's instructions were carried out accurately by Salazar, who said that Cuellar was only precluded from taking the van home:

> TO WHOM IT MAY CONCERN:
> On November 7th, 1984, approximately 8:30 in the morning I, Eloy Salazar (dispatcher and assistant manager to MR. FRANK LARSON), advised Tomas Cuellar that he was not allowed to take any company vehicles home during the day or after work hours, per FRANK LARSON.
> Cuellar responded that he could not work here at the company if he was not allowed to take a panel truck home. He left that morning and did not come back.

Cuellar contends that he had no notice of the affidavit or of its contents; was suprised by the contents; objected to introduction in evidence of the affidavit; and, after the objection was overruled, requested a continuance to subpoena Salazar, which was denied. Cuellar contemporaneously claimed that he was being denied his right to confront and cross-examine an adverse witness whose credibility directly related to the central issue in the case, *viz.*, the existence *vel non* of "good cause" to leave employment. Further, he informed the hearing referee of the unreliable nature of the affidavit—which apparently was prepared by Larson's secretary several months after the event—and of the need to cross-examine Salazar—to check the accuracy of Salazar's recollection and to test the veracity of the only other person who

could corroborate or deny what Cuellar had heard and said.

The appellate referee issued a decision on March 28, 1985 disqualifying Cuellar from the unemployment benefits that he had received from the local TEC. In specific, the referee found that

on the last day he worked, [the claimant] was told by Mr. Salazar, the local dispatcher, that he could not use the van. The claimant was not supposed to take the vans home without specific permission from Mr. Larson, but could use the vans in the performance of his work duties. The claimant did not seek any clarification, but walked off the job because he had been dissatisfied with his work situation for some time. Mr. Larson was on the job that day, but the claimant did not make any attempt to contact him.... With regard to the incident which immediately precipitated the claimant's leaving the job, the claimant could have contacted the employer to discuss the situation with him, and seek clarification, since the dispatcher was under Mr. Larson's supervision. The claimant did not give the employer an opportunity to rectify the situation or to explain the circumstances under which the claimant could use the van prior to quitting the job. In view of the above, the Appeal Tribunal concludes that the claimant has not established good cause connected with the work itself for voluntarily quitting the job.

It is readily apparent that the referee relied upon the affidavit to some degree in reaching the determination to disqualify Cuellar from receiving unemployment benefits under Section 5(a) of the Texas Unemployment Compensation Act, as codified at Tex. Rev.Civ.Stat.Ann. Art. 5521b-3(a) (Vernon 1987). There is no evidence but the affidavit from which she could have discredited Cuellar's version of what Salazar conveyed and neglected Cuellar's alleged attempt to obtain clarification from Larson through Salazar.

On April 1, 1985, Cuellar appealed the decision of the appellate referee to the Commissioners of the TEC. On May 10, 1985, the Commissioners affirmed the decision of the referee. On May 16, 1985, Cuellar filed a motion for rehearing, which the Commissioners denied on June 13, 1985.

On July 2, 1985, Cuellar filed his initial complaint in federal court under 42 U.S.C. § 1983, alleging that the referee's denial of cross-examination of Salazar deprived him of procedural due process under the fourteenth amendment to the United States Constitution. Defendants responded on July 31 with an answer and a motion to dismiss for lack of jurisdiction and for failing to state a claim upon which relief can be granted. On September 6, after obtaining extended time, Cuellar responded to the motion to dismiss and moved to amend his complaint.

On September 27, the district court instructed the defendants to provide authority for their argument that state appellate review, putatively under a trial *de novo* standard, would cure any potential administrative procedural due process violation. He also instructed Cuellar to respond specifically to this issue. On October 15, the state filed its supplemental brief. On October 21, Cuellar filed his supplemental brief in opposition to the motion to dismiss, stating that state appellate review was actually conducted under a substantial evidence standard, which Cuellar alleged would be met (by definition) if the referee made use of the affidavit in resolving the credibility dispute against him. State appellate review would therefore be meaningless in regard to the critical credibility choices posed, regardless of what additional evidence was made available in court, and could not cure the administrative due process failure. On April 18, 1986, the district court permitted unopposed amendment of the complaint pursuant to Fed.R.Civ.P. 15, and issued an order granting defendants' motion to dismiss.

The district court addressed the merits of Cuellar's challenge and held that the failure to permit cross-examination had not alleged a fundamental unfairness. Citing *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the district court held that TEC provided Cuellar with a fair

hearing, affording the opportunity to present evidence, to object to evidence, and to call any witness Cuellar felt was necessary. In particular, the district court stated that

> Salazar was certainly not a surprise witness and plaintiff, [sic] should have anticipated the employer's reliance on Salazar's version of events.... [I]t would appear to the Court that confrontation would have only been relevant to the credibility issues. The Referee was aware of the affiant's relationship to the employer and his natural biases when she weighed the evidence. Her findings and conclusions do not show that plaintiff's testimony was discounted because of inconsistencies with the affidavit, nor that the affidavit was given unusual weight. The risk that the procedure of allowing testimony by affidavit here resulted in an erroneous determination is minimal. Conversely, the government's interest in hearing all available evidence at the time set for the hearing, particularly where the adverse evidence is of no surprise to the plaintiffs, is great.... Lastly, the Texas Employment Commission Act gives the plaintiff the opportunity to present additional evidence to the state district court. Plaintiff's argument that the substantial evidence test as applied by Texas courts ... does not correct due process variations, seeks an advisory opinion from this court.... The speculative nature of this argument will not support a finding of due process violations.

The district court also dismissed the pendent state claims. Cuellar appeals from this order, apparently issued under Fed.R. Civ.P. 12(b)(6).

## II. Procedural Due Process Requirements

### A. General Considerations

The dictates for procedural due process provided by administrative hearings in regard to deprivations of property are succinctly stated in the Supreme Court's recent pronouncement in *Brock v. Roadway Express, Inc.*, —— U.S. ——, ——, 107 S.Ct. 1740, 1746–47, 95 L.Ed.2d 239 (1987):

[T]he first step is to identify a property or liberty interest entitled to due process protections, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538–539, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 576–578, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972)[; *Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972) ].... "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Though the required procedures may vary according to the interests at stake in particular contexts, *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971), "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); see also *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Depending on the circumstances, and the interests at stake, a fairly extensive evidentiary hearing may be constitutionally required before a legitimate claim of entitlement may be terminated. See *Goldberg v. Kelly*, 397 U.S. 254, 266–271, 90 S.Ct. 1011, 1019–22, 25 L.Ed.2d 287 (1970) (suspension of welfare benefits invalid if not preceded by an evidentiary hearing giving the recipient an opportunity to confront witnesses and present evidence and argument orally). In other instances, however, the Court has upheld procedures affording less than a full evidentiary hearing if " 'some kind of a hearing' " ensuring an effective "initial check against mistaken decisions" is provided before the deprivation occurs, and a prompt opportunity for complete administrative and judicial review is available. *Loudermill, supra*, 470 U.S., at 542, 545, 105 S.Ct., at 1493, 1495, quoting *Roth, supra*, 408 U.S., at 569–570, 92

S.Ct., at 2705; see also *Mathews, supra,* 424 U.S., at 349, 96 S.Ct., at 909. Determining the adequacy of predeprivation procedures requires consideration of the Government's interest in imposing the temporary deprivation, the private interest of those affected by the deprivation, the risk of erroneous deprivations through the challenged procedures, and the probable value of additional or substitute procedural safeguards. *Mathews, supra,* at 335, 96 S.Ct., at 903.

There can be no doubt that unemployment benefits are a species of property protected by the fifth and fourteenth amendment due process clauses, regardless of whether the claimant wishes to establish or retain benefits. *See Sherbert v. Verner,* 374 U.S. 398, 405, 83 S.Ct. 1790, 1794–95, 10 L.Ed.2d 965 (1963); *California Dept. of Human Resources Development v. Java,* 402 U.S. 121, 123–24, 91 S.Ct. 1347, 1352, 28 L.Ed.2d 666 (1971); *Graves v. Meystrik,* 425 F.Supp. 40 (E.D.Mo.1977) (3 judge court), *aff'd without opinion,* 431 U.S. 910, 97 S.Ct. 2164, 53 L.Ed.2d 220 (1977); *Berg v. Shearer,* 755 F.2d 1343, 1345–46 (8th Cir.1985); *Wilkinson v. Abrams,* 627 F.2d 650, 664 & n. 18 (3rd Cir.1980); *Ross v. Horn,* 598 F.2d 1312, 1317–18 (3rd Cir. 1979), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *cf. Robbins v. U.S.R.R. Retirement Board,* 586 F.2d 1034, 1035 (5th Cir.1978), *modified on petition for rehearing and petition for rehearing en banc,* 594 F.2d 448 (5th Cir. 1979). Although the interest to the claimant is substantial, arguably it is not as substantial as that to the welfare recipients in *Goldberg,* because "unemployment compensation benefits are not necessarily need-based" and " '[t]he victims of erroneous recoupment, like the claimant in *Eldridge,* generally have resort to welfare and other benefits.' " *Ross,* 598 F.2d at 1319 (citing *Mattern v. Mathews,* 582 F.2d 248, 255 (3rd Cir.1978), *cert. denied sub nom. Califano v. Mattern,* 443 U.S. 912, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979)). But just as arguably, the interests are equally cogent. As one Supreme Court Justice stated in *Java* :

> The argument of California in this case is surprisingly disingenuous. First it seeks to distinguish Goldberg v. Kelly ... on the ground that 'welfare is based on need; unemployment insurance is not.' But that simply is not true, for the history makes clear that the thrust of the scheme for unemployment benefits was to take care of the need of displaced workers, pending a search for other employment.

402 U.S. at 135, 91 S.Ct. at 1356 (Douglas, J., concurring); *see Wilkinson,* 627 F.2d at 666 (acknowledging the *Ross* holding, but citing a Department of Labor Report stating that unemployment benefits pose " 'at least as urgent a need ... as for those under the Public Assistance Programs.' "). Without the benefit of the district court's analysis, we pretermit further consideration of the importance of this particular property interest, and provide a general description of considerations of due process applicable to this case.

In *Goldberg,* the Supreme Court held that a hearing at a meaningful time and in a meaningful manner "require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an *effective opportunity to defend by confronting any adverse witnesses* and by presenting his own arguments and evidence orally." 397 U.S. at 267–68, 90 S.Ct. at 1020 (emphasis added). Confrontation is especially important to administrative procedures when a credibility dispute rests upon "the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers...." *Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959). Notwithstanding, *Goldberg* was the only case in which the Supreme Court "required a full adversarial evidentiary hearing prior to adverse governmental action." *Loudermill,* 470 U.S. at 544, 105 S.Ct. at 1495.

In *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the plurality held that notice of the charges, an opportunity to respond in writing, and a written decision constituted an adequate pre-deprivation hearing before termination of federal civil service employees. The majority of justices rejected both the plurality's view

that the statutory terms conveying the property right defined the due process interest, 417 U.S. at 166–67, 94 S.Ct. at 1650–51 (Powell, J., concurring), and the dissent's position that confrontation rights were required before deprivation, *id.* at 169–71, 94 S.Ct. at 1652. *Mathews* reaffirmed these *Arnett* holdings in the context of disability benefits, and prescribed the aforementioned tripartite balancing test to assess hearing requisites. 424 U.S. at 335, 343, 96 S.Ct. at 903, 907. *Mathews'* determination rested in large part upon the lack of credibility determinations required of the pre-deprivation hearings. *Id.* at 344–45, 96 S.Ct. at 907 (citing *Richardson v. Perales*, 402 U.S. 389, 404, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971)).

■ Further, under *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982) (citing *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)), the timing and nature of the required hearing only " 'depend on appropriate accommodation of the competing interests involved.' " The existence of post-deprivation remedies through further administrative hearings, judicial review, or independent state-law based causes of action are irrelevant to the question of what constitutes adequate hearing procedures, when the deprivation occurs in a non-random, state-authorized hearing convened pursuant to "established state procedures." *Id.* at 434 & n. 8, 435–37, 102 S.Ct. at 1157 & n. 8, 1158–59 (finding inapplicable *Paratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)); *see Hudson v. Palmer*, 468 U.S. 517, 532 & nn. 12, 13, 104 S.Ct. 3194, 3203 & nn. 12, 13, 82 L.Ed.2d 393 (1984); *Holloway v.*

*Walker*, 784 F.2d 1287, 1292–93 (5th Cir. 1986).

Cuellar challenges the established procedures under which the state's administrative appeal hearing before the referee was conducted. He does not allege that the referee was not authorized to reject the affidavit, but that she did so properly under procedures that violate due process. Thus, our review need not and should not consider the defendants' argument that state judicial review (or administrative appeals to the commission) could inform as to the procedural due process requirements of the referee's hearing, that such review (or appeals) could (in general) cure prior due process defects, or that the review (or appeals) provided by the state in fact is adequate to cure prior defects. These due process challenges are also premature.

Similarly, we need not and should not consider whether the state's judicial review (or appeals) would consider affidavits such as Salazar's to constitute "substantial evidence." *See* note 3 *infra.* The only question before the court is whether and under what circumstances cross-examination of adverse affiants is required at a disqualification hearing, once provided by the State, before an unemployment benefit referee. *Cf. Java*, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971); *id.*, 402 U.S. at 135, 91 S.Ct. at 1356 (Douglas, J., concurring); *Shearer*, 755 F.2d at 1346–47; *Wilkinson*, 627 F.2d at 664 & n. 18; *Ross*, 598 F.2d at 1317–18; *Graves*, 425 F.Supp. at 47–50; *Gary v. Nichols*, 447 F.Supp. 320, 322–28 (D.Idaho 1978); *Drumright v. Padzieski*, 436 F.Supp. 310, 319–21 (E.D.Mich.1977).[1]

---

**1.** We decline to define the precise requirements for this unemployment disqualification hearing without the benefit of the district court's opinion and, especially, because of the irreconcilable conflicts in the case law's descriptions of the importance and nature of the basic interests. Further, because this type of hearing is both an appeal and a *de novo* evidentiary hearing to deprive the claimant of benefits obtained from the local board, with further administrative appeal possible, it demonstrates attributes of both pre- and post-deprivation hearings. *Cf. Ross*, 598 F.2d at 1318–19; *Wilkinson*, 627 F.2d at 666–67. We also note that the cross-examina-

tion at issue in this particular hearing involves critical issues of credibility, posing a quintessential swearing match that cannot be ignored. But we are wholly unprepared to say, on the basis of this record, whether the determination of "good cause" or of other standard questions posed by such hearings routinely involves credibility disputes, or whether there are other relevant attributes, such as high reversal rates, peculiar to the Texas unemployment system. *See Califano v. Yamasaki*, 442 U.S. 682, 696, 99 S.Ct. 2545, 2555, 61 L.Ed.2d 176 (1979); *Drumright*, 436 F.Supp. at 319–21.

### B. Specific Considerations Relevant to Cuellar's Challenge

*Richardson v. Perales*, 402 U.S. 389, 404, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971), which is factually on all threes with the present case, sheds considerable light on the interrelated concerns of notice, credibility, reliability, and opportunities to subpoena witnesses in regard to the meaningfulness of an opportunity to confront adverse affiants at an administrative hearing. Perales was denied, by a first-level state agency, his disability claim that he was incapable of working due to back injuries. The agency relied upon the reports of doctors, some of whom had examined him. Perales subsequently requested a hearing before a hearing examiner. Written notice was provided,

> contain[ing] a definition of disability, advis[ing Perales] that he should bring all medical and other evidence not already presented, afford[ing] him an opportunity to examine all documentary evidence on file prior to the hearing, and t[elling] him that he might bring his own physician or other witnesses and be represented at the hearing by a lawyer. The hearing took place at the time designated. A supplemental hearing was held March 31. [Perales] appeared at the first hearing with his attorney and with Dr. Moralez. The attorney formally objected to the introduction of several reports of [doctors], and of the hospital records. Various grounds of objection were asserted, including hearsay, absence of an opportunity for cross-examination ... and the conclusory nature of the reports. These objections were overruled and the reports and hospital records were introduced.... The hearing examiner, in reliance upon the several medical reports and the testimony of [one doctor who was present and was cross-examined], observed in his written decision, "There is objective medical evidence of impairment which the heavy preponderance of the evidence indicates to be of mild severity.... Taken altogether, the Hearing Examiner is of the conclusion that the claimant has not met the burden of proof." ... It is to be

noted ... that the Secretary has power to issue subpoenas requiring the attendance and testimony of witnesses and the production of evidence and that the Secretary's regulations ... provide that a claimant may request the issuance of subpoenas.... Perales, however, who was represented by counsel, did not request subpoenas for either of the two hearings. The claimant then made a request for review by the Appeals Council.... The Appeals Council ruled that the decision of the hearing examiner was correct.... The District Court stated that it was reluctant to accept as substantial evidence the opinions of medical experts submitted in the form of unsworn written reports, the admission of which would have the effect of denying the opposition an opportunity for cross-examination; that the opinion of a doctor who had never examined the claimant is entitled to little or no probative value, especially when opposed by substantial evidence including the oral testimony of an examining physician; and that what was before the court amounted to hearsay upon hearsay. The case was remanded for a new hearing before a different examiner.... On appeal the Fifth Circuit noted the absence of any request by the claimant for subpoenas and held that, having this right and not exercising it, he was not in a position to complain that he had been denied the rights of confrontation and cross-examination. On rehearing, the Court of Appeals ... emphasized that its ruling that uncorroborated hearsay could not constitute substantial evidence was applicable only when the claimant had objected and when the hearsay was directly contradicted by the testimony of live medical witnesses and by the claimant in person.

402 U.S. at 395–98, 91 S.Ct. at 1424–26. With the important exception that the hearsay documents were medical reports of which Perales had full prior notice, Perales' situation closely parallels Cuellar's. *See id.* at 399, 91 S.Ct. at 1426.

The Supreme Court in *Perales* found no deprivation of due process from the state

agency's admission of the medical affidavits. The Court based its holding on nine factors that would assure the reliability of the hearsay evidence. These factors addressed the peculiarly reliable nature of medical affidavits, the lack of inconsistency between the affidavits in question, and the traditional uses to which medical affidavits had been put. *Id.* at 402–06, 91 S.Ct. at 1429–30. The Court then explicitly distinguished *Goldberg*, because *Goldberg* confronted credibility determinations and addressed termination of benefits once granted, neither of which was at issue. Finally, the court upheld the use of such documents, stating that "[t]he matter comes down to the question of the procedure's integrity and fundamental fairness. We see nothing that works in derogation of that integrity and of that fairness in the admission of consultants' reports, *subject* as they are to being material and *to the use of the subpoena and consequent cross-examination.* This precisely fits the statutorily prescribed 'cross-examination as may be required for a full and true disclosure of the facts.'" *Id.* at 410, 91 S.Ct. at 1431 (emphasis added).

■ To put *Perales* in context, we note that Perales could only request a meaningful *opportunity* to cross-examine. A claimant may choose to waive an opportunity to cross-examine, and is not required to confront the witnesses against him. But neither is the claimant required to make the case against himself, nor to call all witnesses who may be adverse so as to be able to confront them. The critical question, therefore, is whether the plaintiff is afforded a *viable* opportunity to confront *the witnesses* against him—not just to anticipate or to respond to the substance of their testimony—or has been denied the

opportunity to cross-examine such witnesses. In the case of affidavit testimony, this depends critically upon the nature of the hearing, upon notice that the claimant has of the witnesses and their testimony, and upon the opportunities for obtaining and availability of witness subpoenas.

■ Cuellar expressed his surprise at the production of Salazar's affidavit, and explicitly requested the opportunity to confront his discreditor by obtaining a subpoena. There is no evidence that the affidavit was previously filed with the agency or that its existence otherwise was made known to Cuellar prior to the hearing. Witnesses could only be obtained by subpoena at the hearing if they were shown to be "necessary." It would take a Shakespearean actor (and an irrational or incompetent lawyer [2]) to object to the affidavit as a surprise and then to request a continuance to permit confrontation, were the affidavit in fact expected and were Cuellar's version true. There is *nothing* to gain and everything to lose by such a strategy. We must assume the truth of Cuellar's account and the rationality and competence of his attorney because of the summary posture of the case.

Moreover, the affidavit in question is neither inherently reliable nor a product routinely relied upon by administrative or judicial processes. That Cuellar specifically noted reliability failings of the particular affidavit to the hearing examiner could not transform it into reliable hearsay. Further, because Cuellar allegedly did not know of the likely use of the affidavit, he could not make "use of the subpoena [power] and consequent cross-examination" to remedy this arguably impermissible use of affidavit in the first place.[3] In fact, he was

---

**2.** *Cf. Wainwright v. Sykes,* 433 U.S. 72, 103 & n. 5, 97 S.Ct. 2497, 2515 & n. 5, 53 L.Ed.2d 594 (1977) (Brennan, J., dissenting).

**3.** We decline to determine whether the affidavit would constitute substantial evidence under federal or state law. *See generally* Stern, *The Substantial Evidence Rule in Administrative Proceedings: Restrictions on the Use of Hearsay Since* Richardson v. Perales, 36 Ark. L. Rev. 102 (1982). Cuellar has not challenged the lack of substantial evidence (nor the admissibility of

the affidavit), but the denial of cross-examination. Even were we to find that the affidavit would not constitute substantial evidence under federal law (or under state law, and thus that Cuellar would succeed in a state appeal), the state's procedures permit consideration of the affidavit in administrative hearings, and the question remains as to whether a confrontation right is required when the state admits such evidence. *Cf. Reilly v. Pinkus,* 338 U.S. 269, 275–76, 70 S.Ct. 110, 114, 94 L.Ed. 63 (1949).

specifically denied a continuance to permit him to do so.

Assuming that the nature of the hearing neither requires the granting of continuances to permit confrontation of adverse affiants, regardless of the adequacy of notice of such evidence, nor prohibits such evidence outright, the question of the adequacy of notice of Salazar's affidavit is critical to the due process violation alleged.[4] But we cannot fathom, on this record and at this stage of the pleadings, how the district court concluded that Cuellar should have been aware of Salazar's adverse testimony in the affidavit, which to Cuellar must appear a lie. If he thought that his version of the event were correct, there would be no need to subpoena Salazar to corroborate that version, regardless of whether he knew (and believed to be accurate) Larson's version of the instructions given to Salazar. The only notice of the issues at the hearing was whether plaintiff had good cause for leaving. There simply is no evidence in the record on which the district court could ground his conclusion that Cuellar "should have anticipated the employer's reliance on Salazar's version of the events" or that Salazar "was not a suprise witness".

Given these considerations, we believe that it may be possible for Cuellar to prove facts sufficient to demonstrate a violation of his due process rights, and thus the dismissal of his complaint under Fed.R.

Civ.P. 12(b)(6) was inappropriate. In particular, the district court should require on remand that the parties attempt to specify the precise nature of the administrative appeal hearing before the referee. The district court should determine the precise magnitude of the interests involved to the extent necessary to resolve the issues presented in this case. The district court may be required to determine that a claimant possesses a general confrontation right [5]—applying the credibility concerns of *Goldberg, Perales,* and *Mathews*—in such a hearing, that a claimant possesses a confrontation right depending upon the reliability of the affidavit admitted into evidence, that a claimant possesses a confrontation right when provided with inadequate notice of the adverse affiant's testimony, or that a claimant possesses none or all of these rights.

Further, should the district court determine that Cuellar possessed no right to confront Salazar at his administrative appeal hearing, we believe that the interests of justice might be served were the district court to allow Cuellar to amend his complaint to allege an inadequate prior explanation of the evidence to be used against him. Fed.R.Civ.P. 15(a); *see Loudermill,* 470 U.S. at 544, 105 S.Ct. at 1495 (citing *Arnett,* 416 U.S. at 170–71, 94 S.Ct. at 1652–53 (Powell, J., concurring)). Although the analysis of what such a hearing

---

We therefore need not determine whether the procedural due process required of such a hearing—or, perhaps, the due process requisites that depend upon the reliability of the affidavit—would preclude the use of such affidavits generally, without adequate notice, without other safeguards regardless of notice, etc. These issues simply are not before us.

4. Both parties agree that *Richardson v. City of Pasadena,* 513 S.W.2d 1 (Tex.1974), adequately states the federal requirements of due process in this situation. With the caveats expressed in notes 3, *supra,* and 5, *infra,* that the nature of the hearing or of the affidavit also may dispose of the issue, we generally agree. Cuellar cites *Richardson* for Texas' recognition of the importance of cross-examination to the inadequacy of judicial review of agency orders under the trial *de novo* /substantial evidence standard, and to the concomitant denial of due process. *Id.* at 3–4. The cited passages emphasize, in pre-*Lo-*

gan *v. Zimmerman Brush Co.* terms, the importance of the opportunity to confront an adverse witness at a meaningful time and in a meaningful manner. The defendants also cite *Richardson* for Texas' recognition that the lack of cross-examination only deprives of due process when the evidence is relied upon without notice, *i.e.,* without the opportunity to confront or to explain. *Id.* at 4. This passage recognizes the ability to waive confrontation rights. If the testimony is by affidavit and the affidavit is admitted into evidence and if the right to subpoena is fully and freely available, then the adequacy of notice may therefore be dispositive.

5. Such general confrontation rights might preclude any use of such affidavit testimony, require provision for continuances on demand regardless of notice, prevent the state from considering such testimony to constitute substantial evidence, etc.

requires would be similar, the functional requirements of a meaningful opportunity to confront adverse witnesses may not be coextensive with those of a meaningful opportunity to present claimant's "side of the story," *id.*, or to confront the evidence, rather than the witnesses, against him. In either event, we neither express nor intimate any opinion as to the application of state law to Cuellar's substantive claim before the state agency should a remand be required because of a violation of procedural due process.

The decision of the district court is VACATED and the cause is REMANDED for further proceedings consistent with this opinion.