## David Langlois v. Department of Employment & Training

[546 A.2d 1365]

No. 86-471

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed April 8, 1988

*Anne Locke*, Burlington, for Plaintiff-Appellant.

*Brooke Pearson*, Montpelier, for Defendant-Appellee.

**Dooley, J.** This is an appeal by a claimant from a denial of unemployment compensation benefits following his discharge by his employer after a dispute over job responsibilities. We reverse and remand.

Claimant was the mill foreman for the Greenmount Lumber Company. On June 19, 1986, he was dismissed by the vice-president of the corporation following an argument over whether or not the mill foreman, in addition to his regular duties, was re-

quired to substitute for company truck drivers who were on vacation or otherwise absent.

The claimant filed for unemployment benefits. In a determination dated July 2, 1986, the claims examiner disqualified claimant from benefits. The examiner, relying on information provided by the corporation, held that because the claimant had previously performed the duties of substitute truck driver, his refusal to continue to do so at the time of his dismissal was a substantial disregard of the employer's business interests. The examiner found that the refusal constituted misconduct because at the time of the refusal claimant knew the refusal would result in his dismissal.

The claimant appealed this determination. A hearing was scheduled with an appeals referee for July 21, 1986. On July 16, at the request of the employer, the hearing was continued until July 28. On July 21, claimant requested subpoenas be issued to the president of the corporation, Richard Villeneuve, to vice-presidents David and Ronald Villeneuve, and to the corporation's office manager Jeannette Villeneuve. Also requested was a subpoena for Guy Roberge, the bookkeeper of the corporation, who was present at the time claimant was dismissed. The requests were made pursuant to 21 V.S.A. §§ 1307 and 1352, which authorize the commissioner and appeals referees to subpoena witnesses to give testimony in disputed claims.

The office of the appeals referee informed claimant by telephone that his request for subpoenas would not be granted because the date of the rescheduled hearing did not allow enough time for the subpoenas to be issued. At the hearing, David and Jeannette Villeneuve appeared on behalf of the employer. Over claimant's objection, the appeals referee allowed the employer to introduce into the record notarized statements by two corporation truck drivers, asserting that claimant had previously worked as a substitute driver when they were on vacation or unable to drive because of other reasons. Also introduced over claimant's objection was a notarized statement by the bookkeeper, Guy Roberge, detailing his knowledge of the conversation between claimant and David Villeneuve on the day the employee was dismissed. These statements, which the record indicates were "edited" by the office manager before being signed by the employees, were objected to on the grounds they did not accurately reflect claimant's duties or the actual conversation which occurred between claimant and David Villeneuve. Also admitted into the record was a prior state-

ment of the bookkeeper, dated June 26, which contains significantly less detail about what he actually saw and heard on the date claimant was dismissed.

In objecting to the statements, claimant also protested the failure of the appeals referee to issue a subpoena to Roberge for the purpose of eliciting sworn testimony which would, according to claimant, contradict the information contained in the statements. The appeals referee did not respond, other than to note that claimant's letter requesting subpoenas and the reasons for the requests were in the record. The referee upheld the examiner's determination that claimant was disqualified.

In his appeal to the Employment Security Board, claimant again objected to the statements in the record and to the failure of the appeals referee to issue subpoenas. The Board, in affirming the appeals referee, held that the reasons for issuing the subpoenas were not sufficient to overcome the evidence in the record that claimant was dismissed for misconduct. The Board reasoned that any testimony from the requested witnesses would be irrelevant and, therefore, the failure to issue subpoenas did not prejudice the employee's ability to respond to the employer's case or to present his own case. We disagree.

■ We start our analysis by noting that both the Board and the referee in this case had the power to "by subpoena compel the attendance of witnesses." 21 V.S.A. § 1352. The statute goes on to provide that such witnesses receive the same witness fee as a person summoned to district court and the fee is paid out of the Board's administration fund. While § 1352 creates the power, it does not detail how the Board or referee must use the power, other than indicating that the Board and referees have some measure of discretion in deciding when to issue subpoenas.

Two of our decisions are helpful in determining how the subpoena power must be used. In *Dague* v. *Department of Employment Security*, 138 Vt. 57, 412 A.2d 706 (1980), we considered the obligation of a referee to an unrepresented claimant. Relying in part on the Board's rules, we held that the referee "owed the claimant every assistance in presenting his case consistent with the referee's duty to impartially decide the issues." *Id.* at 59, 412 A.2d at 707. The appeals referee owed that duty to claimant in this case.

In *Longe* v. *Department of Employment Security*, 135 Vt. 460, 380 A.2d 76 (1977), we considered the use of hearsay evidence to

support essential findings on which an unemployment compensation claimant is disqualified. In *Longe*, the Board had disqualified the claimant based on a finding which was supported only by uncorroborated hearsay where neither the claims examiner nor the referee made the finding involved and the hearsay was directly contradicted by the claimant's testimony. The Court held that because the Board made no attempt to secure better evidence, its reliance on the hearsay violated the statutory command of 21 V.S.A. § 1351 that it conduct its hearing "in such manner as to ascertain the substantial rights of the parties." *Id.* at 463, 380 A.2d at 79. *Longe* is important because it recognizes that the Board at some point has an obligation to attempt to secure better evidence before it relies on hearsay statements.

The rationales of *Dague* and *Longe* may be sufficient alone to require the referee to issue the requested subpoena to assist claimant in meeting the hearsay testimony of Guy Roberge. However, claimant also argues, and we agree, that the duties imposed by *Dague* and *Longe* must be viewed in a broader procedural due process context to determine how they apply in this case. Indeed, claimant submits that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that the referee issue the subpoena in this case.

The due process requirements in administrative adjudication have been set forth most recently in *Brock* v. *Roadway Express, Inc.*, 481 U.S. 252, 107 S. Ct. 1740 (1987). There, the United States Supreme Court stated:

> [T]he first step is to identify a property or liberty interest entitled to due process protections . . . .
>
> "Once it is determined that due process applies, the question remains what process is due." Though the required procedures may vary according to the interests at stake in a particular context, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' "

*Id.* at 260-61, 107 S. Ct. at 1746-47 (citations omitted). There is no question that unemployment benefits are a form of property protected by the Due Process Clause of the Fourteenth Amendment. *Sherbert* v. *Verner*, 374 U.S. 398, 405 (1963).

Two United States Supreme Court decisions are particularly helpful to a due process analysis. In *Mathews* v. *Eldridge,* 424

U.S. 319 (1976), the Court rejected a claim that due process required a hearing before termination of social security disability benefits after extensive analysis of the various interests. The Court defined its analytic process as follows:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335 (citation omitted).

Our consideration of these factors in this case is considerably aided by the United States Supreme Court's decision in *Richardson* v. *Perales*, 402 U.S. 389 (1971). There, a social security disability benefit claimant alleged that he was denied due process in his administrative hearing because the evidence on which he was found not to be disabled were written reports of medical consultants who had never examined him. The Court rejected the claim in large part because the hearsay evidence was "routine, standard, and unbiased medical reports by physician specialists" so that the "specter of questionable credibility and veracity is not present." *Id.* at 404, 407. It emphasized further that the claimant failed to take advantage of the availability of subpoenas that could enable him to confront and cross-examine adverse witnesses. Thus, the Court held:

> The matter comes down to the question of the procedure's integrity and fundamental fairness. We see nothing that works in derogation of that integrity and of that fairness in the admission of consultants' reports, subject as they are to being material and to the use of the subpoena and consequent cross-examination. This precisely fits the statutorily prescribed "cross-examination as may be required for a full and true disclosure of the facts." That is the standard. It is clear and workable and does not fall short of procedural due process.

*Id.* at 410. The import of *Perales* is that the availability of subpoenas to protect the right to confront witnesses is a *quid pro quo* for allowing important administrative determinations to be made based on written hearsay evidence.

When we analyze this case, weighing the interests set forth in *Mathews* v. *Eldridge,* we find a heavy weighting in favor of requiring the issuance of the subpoena. There is no question that the claimant's interest in unemployment compensation benefits is great. As Judge Oakes found in *Wheeler* v. *Vermont,* 335 F. Supp. 856, 861 (D. Vt. 1971) (three judge court), the need for unemployment compensation benefits is "compelling in the constitutional sense." The purpose of such benefits is to "remove economic disabilities and distress resulting from involuntary unemployment . . . and to assist those workers who become jobless for reasons beyond their control . . . ." *Davis* v. *Department of Employment Security,* 140 Vt. 269, 273, 438 A.2d 375, 378 (1981); see also *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 543 (1985) (recognizes "severity of depriving a person of the means of livelihood").

The instant case is one where there is a significant risk of erroneous decision-making. Claimant and the company vice-president offered conflicting testimony on the reasons for claimant's discharge. The only other witness to the actual firing was Guy Roberge, a person that claimant sought to subpoena. Mr. Roberge's written statement was admitted over the claimant's objection. This evidence is very different from that allowed in *Perales.* It comes from a witness whose neutrality is suspect—indeed, there was evidence that the witness's written statement was edited by the company office manager.

As the Florida Court of Appeals noted in a similar case:

> The right to the compulsory attendance of witnesses is especially important to an employee when the issue at the hearing, as here, is whether he was guilty of misconduct connected with his work. His witnesses on this issue would naturally come from his fellow-employees, who ordinarily would be very reluctant to testify voluntarily against the interest of their employer, on whose favor they depended for their livelihood.

*Drogaris* v. *Martine's Inc.,* 118 So. 2d 95, 97 (Fla. Dist. Ct. App. 1960).

It is also relevant that the evidence is not of a type ordinarily introduced in documentary form. It is hearsay that fits within no recognized exception. It is incomplete—cross-examination would likely help the factfinder in understanding and weighing Mr. Roberge's evidence. That cross-examination could be critical to the ultimate questions before the referee.

*Mathews* requires us to look also at the governmental interest, including the fiscal and administrative burden. There is a governmental burden in issuing a subpoena because the Department must pay for it. Certainly this burden could become major if the Department were forced to issue all the subpoenas that a claimant might request. We will not encourage "unnecessary or irrelevant subpoenas." See *Fernandes* v. *Commonwealth Unemployment Compensation Bd. of Rev.*, 53 Pa. Commw. Ct. 79, 82, 416 A.2d 644, 646 (1980).

The Department can minimize this burden, however, by awaiting the referee's hearing to determine if it is necessary to issue the subpoenas to afford claimant a fair hearing. At that point, the necessary subpoenas can be issued with the required testimony to come at a continued hearing. The grant of a continuance to obtain all the evidence will be a minor inconvenience to the Department—in this case, a continuance was already given to allow the employer's representatives to appear.

The ability to evaluate the subpoena issue at the hearing is also an answer to the reason stated by the referee for refusing the subpoena—that is, that the request came too late. Absent extraordinary circumstances, a request for a subpoena made any time before the close of the initial hearing on a claim should be considered timely because it is only at the hearing that the referee can fully evaluate the merits of the request.

Other courts which have looked at the balancing of interests in circumstances like those present here have concluded that the unemployment compensation agency has a duty to issue subpoenas on behalf of the claimant. The most significant decision is that in *Cuellar* v. *Texas Employment Commission*, 825 F.2d 930 (5th Cir. 1987), a case factually similar to that before this Court. In *Cuellar*, the referee allowed into evidence an affidavit of a co-employee of the claimant. As in this case, the co-employee was the only other witness to the events of the termination of claimant's employment. Claimant's request for a subpoena of the co-employee and a continuance for the co-employee's testimony was de-

nied, and the referee found that the termination events occurred as stated in the co-employee's affidavit and not as the claimant testified. The claimant brought a civil rights action to challenge the constitutionality of the procedure used by the referee.

The *Cuellar* court relied primarily on *Richardson* v. *Perales,* holding that that decision required that the claimant be "afforded a *viable* opportunity to confront *the witnesses* against him—not just to anticipate or to respond to the substance of their testimony . . . ." *Cuellar,* 825 F.2d at 938 (emphasis in original). It found that the co-worker's affidavit was "neither inherently reliable nor a product routinely relied upon by administrative or judicial processes." *Id.* On this basis, the court reversed a lower court dismissal of plaintiff's complaint and ordered further fact finding.

Following *Richardson* v. *Perales,* the federal courts have generally held that reliance on hearsay evidence in a social security disability hearing denies due process if the claimant is denied the opportunity to subpoena the declarant. See, e.g., *Allison* v. *Heckler,* 711 F.2d 145, 147 (10th Cir. 1983). A leading case is the Second Circuit's decision in *Treadwell* v. *Schweiker,* 698 F.2d 137, 141 (2d Cir. 1983), where the administrative law judge issued subpoenas as requested by the claimant but refused any enforcement action when the subpoenaed witnesses failed to appear. The judge relied, however, on a written statement from one of the witnesses in denying plaintiff's claim. Based on these facts, the court found a denial of due process under *Richardson* v. *Perales. Treadwell* was based in part on *Fernandez* v. *Schweiker,* 650 F.2d 5, 6 (2d Cir. 1981), where the court reversed a denial of disability benefits because the administrative law judge failed to alert a pro se claimant of her right to subpoena a doctor on whose report the judge relied. See also *Gullo* v. *Califano,* 609 F.2d 649, 650 (2d Cir. 1979) (reliance by administrative law judge on report submitted after the hearing required reversal because claimant had "no opportunity to subpoena and cross-examine" the doctor).

Other state courts faced with circumstances similar to those here have ruled that the claimant has a right to the issuance of the subpoena although the decisions do not always clearly specify the grounds for the conclusion. See *Cross* v. *Daniels,* 271 Ark. 201, 202, 607 S.W.2d 680, 681 (Ct. App. 1980) (where witness sought "on the very point upon which [claimant] was found to have been disqualified," it must be issued); *O'Blenis* v. *Florida Dept. of Labor,* 388 So. 2d 1099, 1100 (Fla. Dist. Ct. App. 1980)

("minimal due process requires the right to subpoena witnesses to testify on one's behalf"); *Spiegel* v. *Lavis Plumbing Services*, 373 So. 2d 72, 73 (Fla. Dist. Ct. App. 1979) (unconstitutional to condition subpoenas on showing of "good cause"); *Drogaris* v. *Martine's Inc.*, 118 So. 2d at 97; *Fernandes*, 53 Pa. Commw. Ct. at 82, 416 A.2d at 646 (error to fail to subpoena witness who had relevant testimony on request of claimant).

Based on our analysis of the competing interests and the decisions from other jurisdictions, we hold that it was a denial of due process of law to refuse to issue the subpoena to Guy Roberge in this case. We further conclude that even if the refusal were not a denial of claimant's due process rights, the failure to issue the subpoena was an abuse of the discretion provided by 21 V.S.A. § 1352 and a failure to conduct the hearing "in such manner as to ascertain the substantial rights of the parties" as required by 21 V.S.A. § 1351.

Although the Roberge testimony may not prove to help claimant, we cannot consider the failure to subpoena Guy Roberge as harmless. Depending on the details of his testimony, it might change the overall conclusion arrived at by the referee. Accordingly, we reverse and remand for further proceedings consistent with this opinion. Because of our disposition of the procedural issue, we do not reach appellant's claim that the conclusion that his discharge was due to disqualifying misconduct was in error.

*Reversed and remanded.*