# State of Vermont v. James Austin

[685 A.2d 1076]

No. 95-256

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 9, 1996

*Howard W. Stalnaker* and *Diane C. Wheeler*, Franklin County Deputy State's Attorneys, St. Albans, for Plaintiff-Appellee.

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Gibson, J.** Defendant appeals an order of the Franklin District Court that revoked his probation and reinstated his underlying sentence for sexual assault. Defendant contends that: (1) there was insufficient evidence to support a violation for leaving the State of Vermont without his probation officer's permission; (2) there was insufficient evidence to support a violation of the condition that he "successfully complete any therapy on sexual aggressiveness to satisfaction of probation officer"; and (3) the probation condition requiring defendant to "submit to urinalysis testing when requested by your probation officer" violated his constitutional rights to due process and to be free from unreasonable searches and seizures. We reverse the determinations that defendant violated the travel and therapy conditions, but affirm the violation of the urinalysis condition.

On April 8, 1990, defendant was charged with one count of sexual assault, 13 V.S.A. § 3252(a)(1), and two counts of custodial interference, 13 V.S.A. § 2451. Defendant and the state's attorney signed a plea agreement in which defendant agreed to plead nolo contendere to the charge of sexual assault and the State agreed to dismiss the custodial interference charges and to recommend a sentence of one to three years, all suspended with probation.

At sentencing, the judge accepted the plea agreement and issued a probation warrant that included the following conditions:

F. You shall remain within the State unless granted permission to leave by your probation officer.

. . . .

M. You shall not purchase, possess, or consume regulated drugs unless prescribed for your use by a physician. You shall submit to urinalysis testing when requested by

your probation officer or any other person authorized by your probation officer.

. . . .

14. Defendant to attend substance abuse counseling and successfully complete any therapy on sexual aggressiveness to satisfaction of probation officer. The order of therapy to be determined by counselors.

Defendant signed the probation warrant on January 2, 1991.

In October 1991, defendant violated probation Conditions M and 14 by failing to meet with his counselors and by admitting that he used marijuana. He served nine days for the violations. In December 1991, defendant again violated Condition 14 by continuing to miss meetings with a counselor and violated Condition M by refusing to submit to a urinalysis test. He served sixteen days in jail and signed a modified probation warrant that included Conditions F, M, and 14.

In February 1995, defendant was twice charged with violating Condition M, first, after a urinalysis test indicated the presence of cannabinoids, and later, after he refused to consent to urinalysis testing. He was also charged with violating Condition 14 by failing to attend substance-abuse counseling sessions.

On March 17, 1995, the State charged defendant with violating Condition F by going to New Hampshire without permission from his probation officer. Defendant was also charged with violating Condition 14 by failing to participate in sex-offender therapy to the satisfaction of his probation officer and by failing to "put into practice what [he] has learned [in therapy]."

The court held a two-day hearing in March and April of 1995 on the alleged violations. In support of the Condition F violation, the State offered an affidavit from a Claremont, New Hampshire police officer, who placed defendant in New Hampshire on March 3, 1995. Defendant objected to the admissibility of the affidavit on the ground that it violated his right to confront an adverse witness. The State did not explain why the officer was absent, and the objection was overruled without explanation from the court. The court found that the affidavit provided sufficient evidence to support a violation of Condition F.

With respect to Condition 14, defendant contended that he had actively participated in the sexual-aggression program and had a four-year history free of sexually violent behavior. Defendant's probation officer and therapist both acknowledged that defendant could identify his "risk factors," but they testified that he had not used this

knowledge to change his life. The court found that, despite his attendance and participation in treatment, defendant had failed to integrate the therapy into his life, and that he was therefore in violation of Condition 14.

Finally, defendant did not contest the urinalysis results but argued that Condition M was invalid because it was not related to the predicate offense and was a violation of his right against unreasonable search and seizure. The court found a clear and logical relationship between the condition and the underlying offense, and further noted that defendant had bargained for the conditions and had agreed to them on three separate occasions. As a result, the court found that Condition M was valid and that defendant had violated it.

On April 17, 1995, the court found that defendant's multiple probation violations demonstrated that probation had ceased to be helpful in defendant's rehabilitation. The court therefore revoked defendant's probation and reinstated the underlying prison sentence. The present appeal followed.

## I.

■ Defendant contends that the evidence did not support a finding that he violated Condition F by leaving Vermont without his probation officer's permission. According to defendant, the only evidence supporting the charge was the affidavit of a New Hampshire police officer, the admission of which violated his rights under the Confrontation Clause.

We have previously held that, to preserve a Confrontation Clause objection, a defendant must raise an objection on confrontation grounds with sufficient specificity to "trigger[] the consideration of a secondary issue, namely, whether circumstances making production of the witness difficult or impractical outweigh the [probationer's] need to confront and cross-examine the witness." *Watker v. Vermont Parole Bd.*, 157 Vt. 72, 78, 596 A.2d 1277, 1281 (1991). As examples of specific objections, we have suggested that a probationer must apprise the trier of fact of the possible violation, express a desire to question the witness, ask the State to produce the witness or show "good cause" why the witness is not present, ask for a continuance, raise the confrontation issue, or object to the absence of the witness. *Id.* In the instant matter, when the state's attorney offered the affidavit at the violation-of-probation hearing, defendant apprised the court of the possible violation, expressed a desire to question the witness, and specifically raised the confrontation issue. Defendant thus preserved his Confrontation Clause objection.

In *State v. Finch*, we held that "reliable hearsay can be admitted in a probation revocation proceeding and serve as the basis for revocation" without undermining the probationer's confrontation rights. 153 Vt. 216, 218, 569 A.2d 494, 495 (1989). In *Finch*, the trial court revoked the defendant's probation after finding that the defendant had violated a no-alcohol condition. The evidence supporting the violation consisted of the testimony of the defendant's probation officer, who recounted statements made by the defendant's mother and by a police officer, and a report from a detoxification center documenting the defendant's admission and treatment. After observing that the hearsay sources were "mutually supportive," and that the medical report was of the kind in which questions of credibility and veracity were not present, we concluded that "[t]he evidence in this case had sufficient indicia of reliability," and affirmed the revocation order. *Id.*

The constitutionality of our holding in *Finch*, however, was called into question when the federal district court for the District of Vermont granted a writ of habeas corpus to the defendant in *Finch*. *Finch v. Vermont Dist. Ct.*, No. 90-9, 1990 WL 312576, at *1 (D. Vt. Sept. 24, 1990) (unpublished mem.). The court, in granting the writ, explicitly rejected this Court's determination "that indicia of reliability may alone justify denial of confrontation." *Id.* at *4. Rather, the court held that, in a probation revocation hearing, a probationer has "the right . . . to cross-examine adverse witnesses 'unless the hearing body specifically finds good cause for not allowing confrontation.'" *Id.* at *2 (quoting *Black v. Romano*, 471 U.S. 606, 612 (1985)); cf. *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (probationer has "a conditional right to confront adverse witnesses"). The court noted that

> hearsay evidence will be admissible under certain circumstances. Conventional substitutes for live testimony such as affidavits, depositions, and certain documentary evidence, all of which tend to bear indicia of reliability, were expressly offered by the *Gagnon* Court as examples of evidence which might substitute for live evidence *upon a showing of cause.*

*Finch v. Vermont Dist. Ct.* at *2 (emphasis added). Thus, the court concluded that, "in a probation revocation hearing *once good cause is shown*, hearsay evidence with sufficient indicia of reliability may be introduced." *Id.* at *5 n.10 (emphasis added).

The instant matter presents the first opportunity we have had to reconsider our holding in *State v. Finch* in light of the federal district court's decision in *Finch v. Vermont District Court.* It is axiomatic

that the decision of the federal district court is not binding precedent upon this Court. 1B J. Moore & J. Lucas, Moore's Federal Practice ¶ 0.402[1], at I-21 n.38 (2d ed. 1995); see *United States ex rel. Lawrence v. Woods*, 432 F.2d 1072, 1076 (7th Cir. 1970) ("[B]ecause lower federal courts exercise no appellate jurisdiction over state tribunals, decisions of lower federal courts are not conclusive on state courts."). As one legal scholar has observed, "[T]he last word which the federal court has as to the continued restraint of a petitioner is not the last word with respect to the future orientation of the state court system that generated the case." R. Cover & T. Aleinikoff, *Dialectical Federalism: Habeas Corpus and the Court*, 86 Yale L.J. 1035, 1053 (1977) (hereinafter, Cover, *Dialectical Federalism*).

■ Nonetheless, a state court, for prudential and policy reasons, should give due respect to the decisions of the lower federal courts, particularly on questions involving the United States Constitution. See *Hornstein v. Barry*, 560 A.2d 530, 536-37 n.15 (D.C. 1989) (uniformity of result in same geographical area); *State v. Knowles*, 371 A.2d 624, 628 (Me. 1977) (interest of developing harmonious federal-state relationships); *State v. Norflett*, 337 A.2d 609, 618 (N.J. 1975) (judicial comity). The need for such respect is especially strong when differences arise through the federal-state habeas corpus process. See Cover, *Dialectical Federalism, supra,* at 1048 ("Given the unanimity rule for a valid conviction, the habeas relationship demands mutual respect and awareness."). At the very least, federal district court decisions, if they are well-reasoned, have persuasive value for federal constitutional questions arising in state courts. *Bradshaw v. State*, 286 So. 2d 4, 6 (Fla. 1973), *cert. denied*, 417 U.S. 919 (1974).

Although we accord respect to the judgment of the federal district court in *Finch v. Vermont District Court,* we observe that the federal district court's view — that "reliability" and "good cause" are separate prongs that must independently be met before dispensing with a probationer's confrontation rights — is not shared by any of the federal circuits that have considered the question of a probationer's confrontation rights in a revocation proceeding. See, e.g., *United States v. Grandlund*, 71 F.3d 507, 510 (5th Cir. 1995); *United States v. Verbeke*, 853 F.2d 537, 539 (7th Cir. 1988); *United States v. Simmons*, 812 F.2d 561, 564 (9th Cir. 1987); *United States v. Bell*, 785 F.2d 640, 642-43 (8th Cir. 1986); *United States v. Penn*, 721 F.2d 762, 766 (11th Cir. 1983); *United States v. McCallum*, 677 F.2d 1024, 1026-27 (4th Cir.), *cert. denied*, 459 U.S. 1010 (1982).

The federal circuit courts agree that a trial court, when ruling on the admissibility of hearsay evidence to which a probationer has objected on confrontation grounds, must make an explicit finding of good cause for dispensing with the probationer's confrontation right and admitting the evidence against him. See *Grandlund*, 71 F.3d at 510 n.6; *Simmons*, 812 F.2d at 564; *Penn*, 721 F.2d at 764. In contrast to the Vermont District Court's view, however, the circuit courts have held that "reliability" is a critical factor in the determination of "good cause."[1] See, e.g., *Grandlund*, 71 F.3d at 510 (probationer's qualified right to confront adverse witness may be disallowed upon finding of good cause, in which critical consideration is indicia of reliability of challenged evidence). According to the *Simmons court*:

> The cases thus delineate a process of balancing the probationer's right to confrontation against the Government's good cause for denying it. In particular, good cause may arise from the "difficulty and expense of procuring witnesses." [*Gagnon*, 411 U.S. at 783 n.5.] Our cases also suggest that *the reliability of evidence may provide a basis for its admission.*

*Simmons*, 812 F.2d at 564 (emphasis added). The same test has also been adopted by several state supreme courts. See, e.g., *State v. Yura*, 825 P.2d 523, 530 (Kan. 1992); *State v. Casiano*, 667 A.2d 1233, 1239 (R.I. 1995); *Mason v. State*, 631 P.2d 1051, 1056 (Wyo. 1981).

In Vermont, the rules of evidence are inapplicable in probation revocation proceedings. V.R.E. 1101(b)(3). The federal courts follow the same rule. *Penn*, 721 F.2d at 764; Fed. R. Evid. 1101(d)(3). Nevertheless, in determining the reliability of hearsay evidence offered at probation revocation hearings, the federal circuit courts have been guided by the traditional hearsay exceptions and exclusions from hearsay as recognized in the rules of evidence. See, e.g., *Simmons*, 812 F.2d at 564-65 (probationer's confrontation right in revocation hearing not infringed by admission of hospital records bearing "traditional indicia of reliability"); *Bell*, 785 F.2d at 643-44; *Penn*, 721 F.2d at 766.

---

[1] The District of Columbia Court of Appeals has gone even further than the circuit courts, holding that a determination of reliability resolves the admissibility of hearsay evidence at probation revocation hearings. See *Harris v. United States*, 612 A.2d 198, 201-02 (D.C. 1992) ("All that is required before admitting evidence at a probation revocation hearing is a determination that the proffered evidence is reliable.").

In *Bell*, for example, the Eighth Circuit concluded that "urinalysis laboratory reports bear substantial indicia of reliability" because "[t]hey are the regular reports of a company whose business it is to conduct such tests." *Bell*, 785 F.2d at 643; see Fed. R. Evid. 803(6). The court also concluded, however, that "police reports of [the probationer]'s arrest do not bear the same indicia of reliability," because they "are inherently more subjective than laboratory reports of chemical tests and are not intended by their authors to be relied upon in the same manner as laboratory reports." *Bell*, 785 F.2d at 643-44; see Fed. R. Evid. 803(8)(B) (excluding from hearsay exception matters observed by police officers).

 Upon reflection, we find the approach taken by the federal circuit courts to be well-reasoned and persuasive. Accordingly, we hold that, in a probation revocation hearing, a trial court must make an explicit finding, and must state its reasons on the record, whether there is good cause for dispensing with the probationer's confrontation right and admitting hearsay into evidence.[2] See *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). We are not called upon to establish the limits of what does or does not constitute sufficient good cause. We agree with the circuit courts, however, that an important factor in the court's determination of good cause is the reliability of the evidence offered by the State, particularly where that evidence bears traditional indicia of reliability.

The rule we announce today is not wholly inconsistent with our decision in *State v. Finch*. In *Finch*, we found no infringement of the probationer's confrontation right resulting from the admission of a detoxification center report. *Finch*, 153 Vt. at 218, 569 A.2d at 495. We held that "[t]he detoxification center report appears to be the kind of medical report where . . . the '"specter of questionable credibility and veracity is not present."'" *Id.* (quoting *Langlois v. Department of Employment & Training*, 149 Vt. 498, 502, 546 A.2d 1365, 1368 (1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 407 (1971)). Our decision in *Finch*, however, was silent on the question of whether the

---

[2] In *Bell*, the Eighth Circuit affirmed a revocation order despite the absence of an explicit finding of good cause by the federal district court. 785 F.2d at 643 n.3. According to the circuit court, "A finding to this effect . . . is implicit in [the district court's] decision overruling Bell's objections to the evidence in question . . . ." *Id.* Although our disposition today does not require us to reach the question of whether the trial court's finding of good cause may be "implicit in its decision," we have grave doubt as to the soundness of such a practice in light of the requirement, enunciated in *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972), that "the hearing officer specifically find[] good cause for not allowing confrontation."

district court must make an explicit finding of good cause before admitting the evidence, and appeared to reject the defendant's contention that such a finding is required. *Finch*, 153 Vt. at 217, 569 A.2d at 494-95. Consequently, we overrule *State v. Finch*, insofar as that decision is inconsistent with the rule we announce today.

In the instant case, the State offered evidence in the form of an affidavit from a Claremont, New Hampshire police officer, who placed defendant at the scene of a traffic stop in New Hampshire. As a general matter, affidavits are among the types of evidence that the federal courts have found to be "conventional substitutes for hearsay" in probation revocation hearings. *Penn*, 721 F.2d at 765; see *Gagnon*, 411 U.S. at 783 n.5 ("[W]e did not . . . intend to prohibit use *where appropriate* of the conventional substitutes for live testimony, including affidavits . . . .") (emphasis added). The affidavit in this case, however, arises from a traffic stop by a law enforcement officer. As the Eighth Circuit Court of Appeals explained in *Bell*, when comparing police reports to urinalysis reports, "The relationship between police officers and those whom they arrest is much more personal and adversarial in nature than that between chemists and those whose urine they test." *Bell*, 785 F.2d at 644. Consequently, police arrest reports "do not bear the same indicia of reliability as [urinalysis] reports." *Id.* at 643. We note that the Vermont Rules of Evidence specifically exclude "investigative reports by police and other law enforcement personnel" from the public-records exception to the hearsay rule. V.R.E. 803(8)(B)(i). Prior to the promulgation of the rules of evidence, police investigative reports were inadmissible at common law in Vermont. See *Vladyka v. Page*, 135 Vt. 252, 253, 373 A.2d 539, 540 (1977).

█ The district court made no finding that the evidence offered by the State was sufficiently reliable to overcome defendant's objection, but instead overruled defendant's objection summarily. We conclude that the affidavit of the New Hampshire police officer does not bear the traditional indicia of reliability that will permit admissibility of the affidavit over a valid objection on confrontation grounds. The affidavit was therefore improperly admitted in violation of defendant's confrontation rights.

With respect to probation orders, "[f]indings fairly and reasonably supported by any credible evidence must stand." *State v. Sanborn*, 155 Vt. 430, 436, 584 A.2d 1148, 1152 (1990). In the instant matter, the court's finding that defendant travelled to New Hampshire, in violation of Condition F, was supported only by the improperly

admitted affidavit. Without this evidence, the finding has no support and cannot stand.

## II.

Defendant next argues that the evidence did not support the court's finding that he failed to "successfully complete any therapy on sexual aggressiveness to satisfaction of probation officer," as required by Condition 14. Defendant also argues that the condition violates our holding in *State v. Bubar*, 146 Vt. 398, 505 A.2d 1197 (1985), that probation conditions "may not be put beyond the probationer's control." *Id.* at 405, 505 A.2d at 1201-02.

In a probation revocation hearing, the State bears the burden of proving the probation violation by a preponderance of the evidence. *State v. Bushey*, 149 Vt. 378, 382, 543 A.2d 1327, 1329 (1988). The State meets its burden by showing "'that there has been a "violation" of the *express* conditions of probation, or of a condition so *clearly implied* that a probationer, in fairness, can be said to have notice of it.'" *Resper v. United States*, 527 A.2d 1257, 1260 (D.C. 1987) (emphasis added) (quoting *Carradine v. United States*, 420 A.2d 1385, 1389 (D.C. 1980)); accord *State v. Peck*, 149 Vt. 617, 619, 547 A.2d 1329, 1331 (1988) ("[D]ue process requires that a convicted offender be given fair notice as to what acts may constitute a violation of his probation, thereby subjecting him to loss of liberty."). If the State meets its initial burden, "the burden of persuasion shifts to the probationer . . . [to] 'prove[] that his failure to comply was not willful but rather resulted from factors beyond his control and through no fault of his own.'" *Bailey v. State*, 612 A.2d 288, 291 (Md. 1992) (quoting *Humphrey v. State*, 428 A.2d 440, 443 (Md. 1981)).

Establishing the violation is a mixed question of fact and law. *Resper*, 527 A.2d at 1260. The trial court must first make a factual determination of what actions the probationer took, and then make "an implicit legal conclusion that certain acts constitute a violation of the probationary terms." *Id.* at 1260 n.1. Findings of fact fairly and reasonably supported by any credible evidence must stand. *Sanborn*, 155 Vt. at 436, 584 A.2d at 1152. We will uphold the trial court's legal conclusions if reasonably supported by its findings. See *id.* at 434-35, 584 A.2d at 1151 (upholding conclusions where supported by findings).

In the instant matter, the State had the burden to prove that defendant had not successfully completed his sex-offender therapy. It was undisputed, however, that defendant continued to take part in the sex-offender program, both at the time the probation violation was

filed and at the time of the probation-violation merits hearing. At the merits hearing, therefore, the State sought to prove that, after three years of sex-offender therapy, defendant had not demonstrated sufficient progress to earn a satisfactory discharge, and that defendant's continued participation in the treatment program would be futile.

Dr. Kraig Libstag, who runs the St. Albans sex-offender treatment program in which defendant was enrolled, testified that he "ha[d] no complaints about [defendant's] participation" in the treatment program, that defendant "shows up on time" and "does his homework assignments," and that, as a result, defendant "certainly has developed an intellectual understanding of his risk factors and problem areas." Defendant's problem, in Dr. Libstag's view, was "his lack of ability to demonstrate any kind of a generalization of the things he learned in group into his practical everyday living." But while he agreed that defendant's progress-to-date would not permit graduation or discharge at that time, Dr. Libstag also testified that defendant needed to continue in sex-offender treatment for up to eighteen additional months.

Based on this evidence, the trial court found that defendant had "not integrat[ed] the rules into his life" and had not "picked up the practical aspects of" the therapy. We uphold these findings, which were supported by credible evidence. The court concluded from these findings, however, that defendant had violated Condition 14. We do not agree that the court's findings support this conclusion. Condition 14 obligated defendant to "successfully *complete*" (emphasis added) sex-offender therapy. Because defendant had not actually ceased his therapy, the court's conclusion is supportable only if it determined that continued therapy served no useful purpose.

We have held that "a refusal to cooperate with the psychologist was a failure to complete [therapy]." *State v. Foster*, 151 Vt. 442, 447, 561 A.2d 107, 110 (1989). In *Foster*, however, the trial court supported its conclusion with findings that the defendant had missed two of three scheduled counseling appointments, and had refused to discuss his offense at the third appointment. In addition, the defendant's psychologist indicated that no further appointments or meetings were necessary or appropriate because of the defendant's refusal to cooperate in discussing his offense. In the present matter, by contrast, defendant's therapist expressed satisfaction with defendant's attendance, participation, and level of intellectual understanding in his treatment, and recommended that defendant continue in the

treatment program. The trial court made no finding that defendant's difficulty in translating the intellectual principles of therapy into everyday practice amounted to willful noncooperation on the part of defendant. Absent such a finding, the conclusion that defendant had violated Condition 14 was premature. See, e.g., *United States v. Lettieri*, 910 F.2d 1067, 1068 (2d Cir. 1990) (district court "jumped the gun" when it revoked probation for alleged violation that occurred before express time condition had expired).

We do not mean to cast doubt upon the trial court's role in evaluating a probationer's participation in sex-offender treatment. We adhere to our belief that a probation agreement is "not to be treated as 'a strait-jacket that defies common sense.'" *State v. Emery*, 156 Vt. 364, 373, 593 A.2d 77, 82 (1991) (quoting *State v. Duffy*, 151 Vt. 473, 478, 562 A.2d 1036, 1039 (1989)). In previous cases, however, the trial court has had the benefit of evidence that defendant's willful conduct had led either to actual discontinuation of treatment by the therapist or to a determination that continued treatment would be futile. See, e.g., *State v. Masse*, 164 Vt. 630, 632, 674 A.2d 1253, 1254 (1995) (mem.) (although evidence showed that defendant was terminated from group, district court looked to whether defendant satisfactorily participated in treatment, and revoked probation based on defendant's poor attendance, failure to complete homework assignments, reluctance to discuss offense and unwillingness to take responsibility for crime); *Emery*, 156 Vt. at 366, 593 A.2d at 78 (defendant attended only first treatment session, then defense counsel advised probation officer that defendant posed suicide risk if he continued therapy); *State v. Gleason*, 154 Vt. 205, 209, 576 A.2d 1246, 1249 (1990) (defendant faithfully met appointments and was pleasant, but when agenda turned to sexual matters, defendant "adamantly refused to engage in any meaningful dialogue regarding his sexual offense convictions," and as a result, therapist discontinued defendant's therapy); *Peck*, 149 Vt. at 618, 547 A.2d at 1330 (defendant continually refused to admit his offense and was terminated from group after six months). In the present matter, neither the evidence nor the findings support the conclusion that defendant had willfully obstructed his therapy, such that continued therapy was futile; indeed, the unrefuted testimony supported the view that defendant needed to remain in therapy. Under such circumstances, the conviction for violating Condition 14 cannot stand.

## III.

Finally, defendant argues that Condition M, which obligated defendant to submit to urinalysis at the request of his probation officer, violates due process because the condition was not reasonably related to the underlying criminal offense. According to defendant, his admitted alcohol addiction could not justify a probation condition requiring him to submit to drug testing. In addition, defendant contends that such a condition infringes on his right to be free from unreasonable searches and seizures.

In *Gleason*, we expressly left open the question whether a probationer may challenge a probation condition for the first time during revocation proceedings. *Gleason*, 154 Vt. at 210 n.2, 576 A.2d at 1249 n.2. We hold today that a probationer is barred from raising a collateral challenge to a probation condition that he was charged with violating, where the challenge could have been raised on direct appeal from the sentencing order.[3] In *United States v. Stine*, 646 F.2d 839 (3d Cir. 1981), the Third Circuit Court of Appeals observed:

> It is fundamental to our legal system that "all orders and judgments of courts must be complied with promptly. If a person to whom a judge directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458 . . . (1975). A person who makes a private determination that an order is incorrect, or even unconstitutional, may properly be convicted of criminal contempt for violation of the order even if his or her private determination is later proven correct in the courts.

*Id.* at 845. For this reason,

---

[3] We have liberally allowed constitutional challenges to probation conditions on direct appeal from the sentencing order. See, e.g., *State v. Moses*, 159 Vt. 294, 303, 618 A.2d 478, 483 (1992) (striking, as unconstitutionally overbroad, probation condition allowing warrantless searches). We have also permitted probationers to raise such challenges in motions to modify their probation conditions. See, e.g., *State v. Whitchurch*, 155 Vt. 134, 139, 577 A.2d 690, 693 (1990) ("While we find this procedure somewhat unusual in view of defendant's plea agreement, we cannot say that it is barred."). Finally, we have allowed constitutional challenges to be made during revocation proceedings when the alleged constitutional infirmity became apparent only as applied to the facts of the alleged violation. See, e.g., *State v. Rickert*, 164 Vt. 602, 603, 665 A.2d 887, 888 (1995) (mem.) (reaching constitutional challenges on appeal from revocation order). Our decision today affects none of these circumstances, but rather reaches only those circumstances where, as here, the probationer could have raised a facial challenge to the condition's constitutionality at the time the condition was imposed.

the alleged unconstitutionality of probation conditions cannot be raised as a defense to their violation in a probation revocation hearing *where the conditions could have been challenged on direct appeal of the judgment of conviction* or on an attack to the sentence through a Rule 35 motion.

*Id.* at 846 (emphasis added); accord *Coles v. State*, 429 A.2d 1029, 1032 (Md. 1981) ("The correctness of conditions of probation must be determined on an appeal from the final judgment of conviction and sentence, and not on the subsequent revocation of probation, 'because to do so, would, in effect, permit a circumvention of [the rule] which requires an appeal to be taken within thirty days' following the entry of final judgment.") (citation omitted) (quoting *Coleman v. State*, 189 A.2d 616, 618 (Md. 1963)).

■ We agree with the reasoning of the courts in *Stine* and *Coles*. In the instant matter, defendant had several opportunities to challenge the validity of his urinalysis condition prior to his decision to refuse to comply. These opportunities existed at his original sentencing hearing in January 1991 and at the violation-of-probation sentencing hearings in November 1991 and March 1992. Defendant could have appealed directly from the imposition of sentence, V.R.Cr.P. 32(a)(2), or moved to correct the sentence, V.R.Cr.P. 35(a), but defendant elected not to pursue any of these avenues of relief. Rather than raise a timely objection, he accepted the condition by signing the original probation warrant and two subsequent modified warrants. Because defendant was barred from collaterally challenging the urinalysis condition at a revocation hearing, the conviction for violating Condition M must stand.

*The district court's judgment that defendant violated Conditions F and 14 is vacated; the judgment that defendant violated Condition M is affirmed. Remanded for resentencing.*

**Morse, J.,** concurring and dissenting. I dissent from Part I. Otherwise, I concur.

The Court holds that defendant was denied procedural due process because he was not permitted to "confront" a New Hampshire police officer, Christopher R. Gentes, whose affidavit placed defendant on March 3 at 9:43 p.m. in Claremont, N.H., in violation of the probation condition that he not be in New Hampshire without permission.

Officer Gentes' affidavit read as follows:

1. I am an Officer assigned to the Claremont Police Patrol Division.

2. The defendant, JAMES W AUSTIN DOB: 06/26/63, was stopped at 9:43 PM on March 3rd, 1995 in the City of Claremont New Hampshire while operating a 1988 Oldsmobile bearing Vermont registration BBY291 for a defective headlight,
3. The defendant produced a Vermont driver's license and vehicle title to the 1988 Oldsmobile
4. The defendant is a convicted sex offender living in Vermont and is on probation in Vermont,
5. The Claremont Police Department received a request from Vermont Department of Corrections, Probation and Parole for any contact information regarding James Austin, attached is a copy of a Motor Vehicle Stop Slip pertaining to the stop of James Austin..

The "slip" attached was an "enforcement action slip" warning defendant that he needed to fix the defective headlight.

When this evidence was presented at the hearing, the only objection was that "[t]he witness is apparently beyond the subpoena power of the Court. We have no opportunity to confront the information . . . [w]ith no way of knowing whether there was even an affidavit form."

The Court faults the trial court for not making a "finding" that the affidavit was reliable. I submit that what was not explicitly stated in the record is nevertheless obvious from the record. The State's evidentiary offer was reasonable, and defendant's objection was insufficient to raise a due process issue.

Defendant never denied his supposed whereabouts, and given the cryptic nature of his objection, the court's summary overruling of it was correct. It would be incredible for defendant not to speak up if he was, in fact, somewhere other than New Hampshire at the time. Defendant had no privilege to remain silent on the issue. Neither a probation violation nor his presence in New Hampshire is a crime. His silence in the face of Officer Gentes' affidavit does not require the State to produce Gentes as a "live" witness. The factual issue was not whether defendant had a defective headlight, and it seems obvious by defendant's position at the hearing that he was not contesting his whereabouts; he was merely raising a technicality over the manner of proof.

The evidence reeked of reliability, defendant had no interest whatsoever in confronting Officer Gentes, and the State's burden of

producing the officer would have been a waste of time. In short, the evidentiary basis and "good cause" to overrule defendant's objection needed no explanation.