2010 VT 46A

**STATE of Vermont v. Seth J. AMIDON**

[8 A.3d 1050]

No. 09-143

¶ 1. August 26, 2010. Defendant appeals a district court order revoking his probation and suspended sentence for sexual assault. Defendant was cited for violating three conditions of probation: that he (1) not participate in friendships or relationships with women or men who have children under the age of eighteen, (2) abide by a curfew, and (3) not buy, have, or use any regulated drugs unless prescribed by a doctor. The court found he violated all three conditions.[1] The court imposed his underlying sentence of four to ten years to serve with credit for time served.

¶ 2. Defendant's original conviction, sentence, and probation were the product of a plea agreement. In September 2008, defendant pled guilty to sexual assault. The district court found the plea to be voluntary, made with knowledge and understanding of the consequences, and with a knowing waiver of constitutional rights. Defendant was sentenced to serve four to ten years, all suspended except for two years and thirty-four days already served. Defendant was then released on probation and ordered to comply with all sex offender conditions, including the three restrictions listed above.

¶ 3. At approximately 10:30 p.m. on April 12, 2009, police arrived at defendant's residence to serve a "Notice Against Trespass" against him on behalf of Stewart's Deli, a local sandwich shop. Defend-

ant's mother answered the door and, despite his 9:00 p.m. curfew, informed the police that defendant was not home. After his mother called to say the police were looking for him, defendant voluntarily arrived at the police station around 10:45 p.m. One of the police officers testified that defendant smelled of marijuana. After admitting that he "took a couple hits off a joint" that evening, defendant submitted to a urinalysis test — which indicated positive use of marijuana.

¶ 4. The officers also questioned defendant about his relationship with a Stewart's Deli employee named Bonnie. Defendant said he met her the previous week while buying lunch and they exchanged phone numbers. He told the officers where she lived and that he had been borrowing her car after he dropped her off at work. When asked if Bonnie had any children, defendant said that she had three children who live with their father in New Hampshire. When he learned he was going to be arrested for violating probation, defendant asked an officer to tell his mother that he had purchased roses for Bonnie, which were waiting for her in the backseat of the car.

¶ 5. At probation revocation hearings, the State has the burden of proving a violation of probation conditions by a preponderance of the evidence. 28 V.S.A. § 302(a)(4); *State v. Decoteau*, 2007 VT 94, ¶ 8, 182 Vt. 433, 940 A.2d 661. Any probation violation can be, within the discretion of the court, "necessary and . . . sufficient . . . ground[s] for the revocation of probation." 28 V.S.A. § 303(a). The court may enforce the underlying sentence if "[t]he probationer is in need of correctional treatment which can most effectively be provided if he or she is confined." 28 V.S.A. § 303(b)(2).

¶ 6. Defendant contends the State failed to provide sufficient evidence to prove that Bonnie had children under the age of eighteen, thereby failing to prove a

---

[1] At the revocation-sentencing phase, the court also considered that defendant failed to complete sex-offender treatment as required.

violation of the first probation condition precluding his participating in relationships with parents of minor children. The State offered no direct evidence of the children's ages, and it was possible that the three children defendant referred to were all over the age of eighteen and still living with their father in New Hampshire. Based on the testimony, however, it was not unreasonable for the court to infer that the children were minors. While the State bears the burden of production in the prima facie case, *State v. Coyle*, 2005 VT 58, ¶ 8, 178 Vt. 580, 878 A.2d 1062 (mem.), if the State presents any credible evidence indicating a violation of a condition of probation, then the defendant has the burden of coming forward with evidence to refute the State's case. See *State v. Schroeder*, 149 Vt. 163, 164, 540 A.2d 647, 648 (1987) (per curiam).[2]

¶ 7. The State satisfied its prima facie burden on this point through the probation officer's testimony that defendant volunteered that Bonnie's children lived with their father out of state. There was no reason for defendant to mention the location or custody of the children at all, but for the known probation condition that he not become involved with mothers of children under the age of eighteen. Defendant offered nothing to refute the logical inference that the information so disclosed to the probation officer concerned minor, rather than grown, children of Bonnie.[3] See *id.*

---

[2] This rule is subject to limited recalibration in cases where there are parallel criminal proceedings creating Fifth Amendment concerns, but none of those concerns exist here. See *State v. Begins*, 147 Vt. 295, 514 A.2d 719 (1986).

[3] That defendant conceded the violation at the revocation phase while attempting to explain that he "honestly misunderstood" about "the contact with females with children under the age of 18," reit-

¶ 8. The district court's conclusion — that defendant had a relationship or friendship with a woman with children under the age of eighteen — is also "fairly and reasonably supported by . . . credible evidence [and] must stand." *State v. Austin*, 165 Vt. 389, 397, 685 A.2d 1076, 1082 (1996) (quotation omitted). The court found that defendant, "in his own mind, was intent on embarking on a dating relationship with Bonnie," that he had already engaged in "exchanging phone numbers, borrowing her car, and buying roses for her on Easter Sunday," and that "he had no intention of sharing that with [his probation officer]." And it concluded that "all of those steps . . . reasonably involve prologs to romance." Again, on review, the court's conclusion that a violation had occurred is fairly supported by its findings that there was an impermissible relationship in place.

¶ 9. Defendant also argues that the court abused its discretion by imposing the probation condition without any nexus to defendant's underlying conviction, and that the probation condition unduly restricted his First Amendment right of association. *Austin* speaks directly to both of these challenges: "We hold today that a probationer is barred from raising a collateral challenge to a probation condition that he was charged with violating, where the challenge could have been raised on direct appeal from the sentencing order." 165 Vt. at 401, 685 A.2d at 1084.

¶ 10. In *Austin*, the Court dismissed defendant's constitutional and "nexus" challenges to a probation condition that required urinalysis for drug testing, which he raised only after he failed the

---

erates that the State and the court, and the defendant too, reasonably understood his reference to "children," in the context of his probation and when confronted by the probation officer, to mean minor children.

test. *Id.* at 402, 685 A.2d at 1085. Here, defendant makes similar challenges to a probation condition *after* the court found he violated that condition. However unlikely to prevail, given defendant's agreement to these conditions as part of his original plea bargain, these challenges should have been raised on direct appeal from his sentencing order. Defendant therefore waived his right to collaterally attack a condition of his probation by failing to challenge that condition after conviction.

*Affirmed.*