Filed 05/04/26

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-03712

| Margaret Murray v. City of Barre |
| --- |

## ENTRY REGARDING MOTION

**Title:** Motion in Limine; Motion in Limine Omnibus; (Motion: 7; 10)
**Filer:** Kaveh S. Shahi; Andrew B. Delaney
**Filed Date:** March 25, 2026; April 22, 2026

The motion is GRANTED IN PART and DENIED IN PART.

The Parties to the present matter have filed multiple motions in limine prior to trial. The Court will refer to these motions as omnibus motions as Plaintiff's motion contains seven different issues, and Defendant's contains ten. To the extent possible, the Court has addressed related or overlapping issues in a single section. The Court has addressed the issues raised by both parties by numbering the issues as they appear in each party's motion. In this decision, the Court will not address Plaintiff's three separate motions to exclude the testimony of expert witnesses, Plaintiff's lack of a seatbelt at the time of the crash, and motion for a jury view of the scene. The Court will address those motions in a separate decision.

As outlined in more detail below, the Court finds that each party is entitled to some relief sought but not in others. As a result, the parties' omnibus motions in limine are **Granted in Part and Denied in Part.**

### Standard of Review

A motion in limine is addressed to specific evidence and evidentiary issues. It is a useful device to limit evidentiary issues and assist the flow of trial. *State v. Dubois*, 150 Vt. 600, 602 (1988). They are, however, surgical devices meant for limited precision, rather than broadsides aimed at the opposing party's case. Id. (quoting the Iowa Supreme Court's observation that such motions are to be used as rifles and not shotguns). Such motions are directed to the broad discretion of the trial court, which must look to whether such evidence could, within the conceivable circumstances of the upcoming trial, be admissible. Id. A motion in limine is often directed toward excluding evidence, but it can be used to confirm the admissibility of evidence. See , e.g., State v. Menize, 2023 VT 48, ¶ 6.

To the extent that the Court denies a motion in limine, it is a preliminary ruling and does not mean that the evidence is admissible. *State v. Koveos*, 169 Vt. 62, 69 (1999). Regardless of of a denial to exclude or a grant of a motion to allow, the parties still have the obligation to lay

1

the foundation for any evidentiary offer and to seek its admission at trial.  In this respect, the motion in limine serves to both short-circuit the objection process and to allow the parties slightly more time to articulate the reasons for and against admission with the ability to cite case law and construct argument.

## Legal Analysis

1. *Plaintiff's First Issue: Use of the term "Vulnerable User"*

Plaintiff's first issue within their omnibus motion in limine seeks to exclude use of the term "vulnerable user" as that term is defined under 23 V.S.A. § 4(81) during the trial.

It is not disputed that Defendant, as a municipal employee operating a plow truck, generally qualifies as a "vulnerable user" under Section 4(81).  23 V.S.A. § 4(81) (defining a vulnerable user to include "an operator of highway building, repair, or maintenance equipment or of agricultural equipment").  The problem lies in what meaning attaches to this status.  There are certain provisions under title 23 that apply to "vulnerable users," and in some of these sections, drivers are required to take certain additional precautions when dealing with these users on the roadway.  See 23 V.S.A. §§ 1033, 1035, 1039, and 1049.  Particularly relevant to the present case, Section 1033(b) requires drivers passing or approaching "vulnerable users" to "exercise due care."  23 V.S.A. § 1033(b).  This includes slowing down and increasing the clearance distance to at least 4 feet with the "vulnerable user" to pass.  Id.

In this case, however, the key standards do not necessarily involve the provisions regarding "vulnerable users."  First there is the standard that applies to Defendant under 23 V.S.A. § 1113.  This provision creates a standard for any motor vehicle backing into traffic from a private driveway.  This statute does not exempt "vulnerable users" or create a different standard for vulnerable users who are backing out of driveway.  Therefore, whether Defendant was or was not a "vulnerable user," his obligations under Section 1113 would have been the same.  This does not appear to be contested.

The question really lies with whether Plaintiff was obligated to treat Defendant as a "vulnerable user."  In this respect, the Court does not understand there to be any limitations on Section 4(81)'s definition that would only make the plow truck into a "vulnerable user" if it was actually plowing at the time of the accident.  There appears to be no dispute that Defendant was turning around because he had finished a portion of his plowing duties and was circling back to continue the plowing.  The fact that he was turning and not plowing at the time of the accident does not take him out of the vulnerable user category.  The same vulnerabilities are still present—a large, unwieldy vehicle with limited speed, visibility, and maneuverability.  Moreover, 23 V.S.A. § 1033(b)'s language covers both passing and approaching "vulnerable users."  Given that the requirements of Section 1033(b) are to slow down and give 4 feet of space, the Court understands that this would reasonably extend to both situations where a car was

2

passing a plow truck and approaching a plow truck—whether the truck was plowing, turning, stopping, or otherwise. For this reason, the Court does not agree with Plaintiff's contention that the plow truck would not qualify as a "vulnerable user" simply because it was not plowing at the moment of the crash.

To the extent that there may be some potential for confusion at the end of the evidence, the Court's instructions will lay out the separate duties for each of the parties and clarify, if necessary, what the term "vulnerable user" means and its limited application.

For these reasons, Plaintiff's first argument regarding vulnerable users is **Denied.**

2. *Plaintiff's Second Issue: Special Status for Defendant Plow Truck Driver*

Plaintiff's second argument concerns Defendant's status as a plow truck driver and whether Defendant is entitled to a special status in backing out. Defendant does not seek special status or immunity for backing out of the driveway. Therefore, the Court will apply 23 V.S.A. § 1113 without modification. To this extent, Plaintiff's argument is not contested, and it is **Granted.**

3. *Plaintiff's Third Issue: Defendant's Expert's Testimony Regarding Glare and Defensive Driving Steps*

Plaintiff's third argument in her motion in limine looks to restrain the Defense's ability to raise a comparative negligence claim. Specifically, Plaintiff seeks to limit Defendant's expert's expected testimony regarding whether Plaintiff should have pulled over when the glare became intense just prior to the accident. Plaintiff also seeks to limit testimony about glare to Defendant.

This motion is **Denied.** The issue of glare is an equal opportunity issue as it was a condition for both operators, and the jury is entitled to hear testimony regarding how it affected both drivers, and how each driver coped with the situation. As to the expert's opinion, Plaintiff's point that there is no statutory duty to pull over when confronted with glare is fair, but this point is really a cross-examination issue not an admissibility issue. If the Defendant's expert is qualified to opine on the reasonable standards of care, he can offer his opinion about what is reasonable when operating in certain conditions for the jury's determination. See *Williamson v. Clark*, 103 Vt. 288 (1931) (jury can determine whether an automobile was travelling at a safe rate of speed and applied its brakes in a reasonable manner). While it is fair game for Plaintiff to cross-examine the expert and note that pulling over is not required under Vermont law, the expert's opinion, depending on the foundation laid, is potentially a permissible statement of what a reasonable motorist should do in the case of glare.

3

4. *Plaintiff's Fourth Issue and Defendant's First Issue: Admission of Accident Scene Police Report*

Plaintiff's fourth argument concerns the investigating officer's police report. Defendant has stated that it does not intend to offer the report, but it may use the report to refresh the officer's recollection. In light of Defendant's response, this issue is somewhat premature, but the Court will **Grant** the motion **in Part** at this time but only to the extent that the report or some part of it is sought to be admitted without a witness. V.R.e. 803(8)(B)(i).

Similarly, Defendant's first argument in its own omnibus motion in limine seeks a ruling on the admissibility of certain parts of the police report. As Defendant concede police reports are deemed hearsay under V.R.E. 803(8)(B)(i) and may not be admitted absent the testimony of the declarant. Defendant's cites an unpublished magistrate's decision from the Southern District of New York for the proposition that the Defense can extract various portions of the report to use as admissions by a witness against her interest. *Spanierman Gallery, Profit Sharing Plan v. Merritt*, 2003 WL 22909160, at *5–6 (S.D.N.Y. Dec. 9, 2003); compare *State v. Austin*, 165 Vt. 389, 397 (1996) (noting that "the Vermont Rules of Evidence specifically exclude 'investigative reports by police and other law enforcement personnel' from the public-records exception to the hearsay rule."). The problem with *Spanierman Gallery* is that the decision's analysis relies on Federal Rule of Evidence 803(8), which differs from Vermont's Rules in that it expressly permits police reports to be entered without testimony from the declarant. Id. In this respect, *Spanierman Gallery* is addressing a potential double hearsay problem. The Court is looking to whether a party's statements made in a police report where the interviewing officer is not present to testify can be admitted. Id. The Court concludes that it can because (1) the report is admissible under F.R.E. 803(6) and (8), and (2) because the out-of-court statements by a party against their interest are not hearsay and are admissible under F.R.E. 802(d)(2).

In the present case, the situation is different. Under V.R.E. 803(8)(B)(i), the officer's report is not admissible unless the officer is present to testify about the report. Defendants appear to be making the argument that it would like to submit redacted portions of the report containing only the Plaintiff's admissions, but even if such statements are admissible, the report is not, and the Court fails to see how a redacted version cures the fundamental issue of V.R.E. 803(8)(B)(i). For these reasons, the Court **Denies** Defendant's motion for admission at this time, but nothing in this ruling precludes Defendant from calling the officer as a witness.

5. *Plaintiff's Fifth Issue: Private Property Restrictions on City Plow Driving through the Parking Lot*

Plaintiff's fifth argument concerning the owner of Mattress Land's restriction on City plows driving across the property is premature. This appears to be a context specific issue that may arise depending on the status and nature of the testimony and evidence. As such, the Court will not preemptively rule on this issue. This portion of the Motion is **Denied.**

6. *Plaintiff's Sixth Issue: Mr. Morris' Prior Driving Record at the Scene of the Incident and Defendant's Fourth Issue: Plaintiff's Expert's Testimony on Alternative Turn Options*

Plaintiff's sixth argument concerns Mr. Morris' testimony that he has not had an accident. This issue can be divided into two separate issues. The first is whether Mr. Morris' prior driving record is admissible. On this point, Plaintiff is correct that V.R.E. 404 would prevent evidence regarding Mr. Morris' general record as such evidence would be improper propensity evidence. The second question is more complicated.

To begin, evidence of no prior accidents at a particular site are admissible when the evidence can show substantial similarity of conditions to show "(1) absence of the defect or condition alleged, (2) the lack of a causal relationship between the injury and the defect or condition charged, (3) the nonexistence of an unduly dangerous situation, or (4) want of knowledge (or of grounds to realize) the danger." *Mobbs v. Central Vermont Ry.*, 155 Vt. 210, 226–27 (1990); see also *Bazzano v. Killington Country Vill., Inc.*, 2003 VT 46, ¶ 3. In effect, *Mobbs* and *Bazzano* stand for the proposition that evidence of prior non-accidents at a site can be used to rebut or respond to an allegation or evidence that the site was in-and-of itself dangerous. It cannot be shown to establish that the driver had a propensity to drive safe or even that he drove safely on the day in question. Instead, it can be used to provide or rebut evidence concerning the site itself.

In this case, the relevance of Mr. Morris' prior driving record at the accident site and history of safely turning around at the spot is likely to be relevant because Plaintiff's expert has raised concerns with the spot that Mr. Morris selected for the turn. Plaintiff's expert has suggested both alternative spots as well as a Vermont-turn around as potentially safer alternatives. To the extent that that Court allows such testimony, Mr. Morris' history of turns at the spot where the crash occurred is reasonable and relevant under *Mobbs* and *Bazzano* to challenge the causative connection between the crash and the inherent dangers suggested by Plaintiff's expert.

At this juncture, however, the Court cannot determine if Plaintiff's theory will rest on Plaintiff's theory of an inherently dangerous spot, or on Mr. Morris' alleged negligence in failing to spot Plaintiff when turning out. As such, the Court will not rule on this issue at this time as it will depend on Plaintiff's evidence and state of the record at the time that Defendant offers Mr. Morris' testimony on this issue. Nevertheless, the Court agrees with Plaintiff that Mr. Morris' larger driving record is irrelevant and improper propensity evidence. For these reasons, Plaintiff's motion on this issue is **Granted in part and Denied in part**. Mr. Morris may not testify about his broader driving record, but the Court does not rule on his ability to testify about his history of driving at the site of the incident and performing the turnaround at this juncture. Instead, the Court will await the status of the record at the time this information is sought to be introduced.

5

Concurrent to the Court's analysis on this point, Defendant's fourth issue in its Motion in Limine, seeking to exclude Plaintiff's expert from testifying about alternative spots is **Denied**. The parties have had sufficient time to develop their case. Plaintiff's expert testifying about other spots in the immediate area where a safer turnaround could have been performed. where Mr. Morris could have turned around appears to be a reasonable and relevant to the question of whether Mr. Morris was negligent in the spot selected and the manner in which he conducted the turn. Most of the issue raised by Defendant go to either cross-examination or rebuttal.[1]

7. *Plaintiff's Seventh Issue and Defendant's Third Issue: Medicare Liens.*

Plaintiff's seventh argument, and Defendants third argument in their respective Motions in Limine concern evidence of a Medicare lien. The Court finds Plaintiff's position on this issue more reasonable. Medicare liens are not a relevant part of the jury deliberations, and their introduction is more likely to cause confusion, than to assist them in their determination. V.R.E. 403, 404. The relevance of these liens is a post-verdict issue that may be addressed through motion practice. Defendant's desire to present evidence of these liens to offset any economic considerations creeping into the award for pain and suffering from the jury is best addressed through a proposed jury instruction to separate medical expenses from non-economic costs. In other words, the Court is open to an instruction to the jury that would require them not to consider or speculate about any medical costs paid or unpaid as part of their deliberations on non-economic damages.

For these reasons, Plaintiff's motion to exclude evidence of Medicare liens is **Granted**, and Defendant's Motion to include evidence of the Medicare liens is **Denied**, except as post-verdict proceedings are concerned**.**

8. *Defendant's Second Issue: Medical Records; Sixth Issue: Expert Witness Reports; and Seventh Issue: History of Prior Crashes*

As to Defendant's second argument in its Motion in Limine, there is no dispute that the parties will be submitting Plaintiff's medical records. Given this agreement, this issue is **Denied as Moot.**

---

[1] Defendant objected to the use of the term "Vermont Turnaround" to refer to a particular maneuver where a motor vehicle reverses from a lane of travel into a side road or driveway. While this maneuver may not have originated in or be unique to Vermont, the nomenclature has been widely used and passed along in Vermont driver's ed circles. See, e.g., *L.Ober*, *Promises Kept*, Seven Days (Jun. 30, 2010) ("On the morning of his second driving test, David Faske seemed confident. Having practiced parallel parking, hill starts and the "Vermont turnaround" countless times in the weeks before the test, he felt sure he would pass."). While the term is not used in the official manual, both Vermont turnarounds and hill starts may be readily found in the Vermont Department of Motor Vehicles manual and are apparently part of any driver's test. VERMONT DRIVER'S MANUAL 56-57 (2025), available at https://dmv.vermont.gov/sites/dmv/files/documents/VN-007-Drivers_Manual.pdf.

There is no dispute about Defendant's sixth argument as neither side intends to submit their expert witness reports but will be using the witnesses' live testimony. Given the lack of the dispute, this issue is **Granted** inasmuch as it applies to both parties and all expert reports.

There is also no dispute about Defendant's seventh argument as Plaintiff does not seek to introduce evidence of prior crashes. Therefore, this issue is **Denied as moot.**

9. *Defendant's Fifth Issue: Mr. Smith's Military Rank and Background*

As to Defendant's fifth argument in its Motion in Limine, the Court will **Grant in Part and Deny in Part.** Mr. Smith is not testifying in his capacity as a military officer, therefore referring to him by his rank would be inappropriate, and the Court directs both parties to use the common title of "Mr." As to Mr. Smith's military record and service, these are relevant parts of his resume and background, and the Court will permit Plaintiff to ask about his background as part of introducing his qualifications.

10. *Defendant's Eighth Issue: Evidence of Impairment.*

Defendant's eighth issue concerns the introduction of evidence of Plaintiff's permanent impairment. Defendant notes that impairment ratings are tools are generally used by workers' compensation systems and other evaluative mechanism to determine the injured party's ability to return to work. *Brown v. W.T. Martin Plumbing & Heating, Inc.*, 2013 VT 38, ¶¶ 14, 25. But impairment as a concept is simply "a loss, loss of use, or derangement of any body part, organ system, or organ function." Id. at ¶ 15 (quoting the American Medical Association Guides to the Evaluation of Permanent Impairment, Fifth Edition at 2). Justice Robinson goes on to note for the majority in *Brown* that that AMA Guides and evaluations for permanent impairment "were developed 'in response to a public need for a standardized, objective approach to evaluating medical impairments.'" *Brown*, 2013 VT 38, at ¶ 16 (quoting AMA Guides at 1). The impairment guides "may be used as evidence to support expert testimony" concerning the nature and extent of the injury, but they do not carry the force of law. *Brown*, 2013 VT 38, at ¶ 22.

Impairment ratings are almost exclusively used in the realm of workers' compensation law. Id. at ¶ 13 (citing 21 V.S.A. § 648, which lists impairment as the measurement for permanent partial disability benefits). Other courts that have looked at this issue have blocked the admission of impairment ratings under Rule 403, in that they offer more prejudice and confusion, than probative value. *Brown v. TG Automotive Sealing Kentucky, LLC*, 2024 WL 3656218, at * 4 (W.D. Ky. Aug. 2, 2024) (collecting cases rejecting the use of impairment ratings to establish damages outside of workers' compensation). As several courts have noted, the AMA Guides expressly state that the impairment ratings are "not to be used for direct financial awards nor as a sole measure of disability." *Porter v. Allen*, 611 S.W.3d 290, 295 (Ky. App. 2020).

7

In this case Plaintiff is not seeking economic damages.  She is retired, and she has not lost employment.  Instead, her damages are non-economic based primarily on pain and suffering and loss of enjoyment.  To this claim, an impairment determination, holds a limited value.  Plaintiff is not seeking long-term disability for the use of a cane, but she is seeking compensation for the loss of certain activities and enjoyments that have been taken through the injury.  In this light, the percentage of whole body impairment offers only a small bit of probative evidence, but it does run the risk that the jury will use the percentage to anchor the more nebulous concepts of pain and suffering.  For these reasons, the Court finds that Plaintiff's impairment ratings should be excluded as their use runs beyond the scope that the impairment rating system was intended to serve, and its limited probative value is outweighed by its prejudicial and confusion impacts on the jury.  For these reasons, Defendant's motion on this issue is **Granted.**

### 11. *Defendant's Ninth Issue: Lay Opinion of Zachary Weiss*

Defendant's ninth argument in its Motion in limine concerns the testimony of Zachary Weiss.  Part of Defendant's issue concerns the use of Mr. Wiess' affidavit at trial, this has been rendered moot by Plaintiff's averment that she will not seek to admit or use the affidavit at trial.  The remainder of Defendant's objection concerns certain opinions that Mr. Weiss expressed in his affidavit and may state at trial.  These opinions are largely tied to his sensory impressions from the accident.  Mr. Weiss was travelling behind Ms. Murray, witnessed the accident and was the first person on the scene.  Paragraphs 1 through 11 as well as 15 and 17 express either neutral background facts or his sense impressions from the accident.  The remaining paragraphs, 12–14 and 16, express some lay opinion, but the opinions largely serve as an expression of his perceptions.  For example paragraph 14 says that he believes the plow truck would have hit him if Ms. Murray's minivan wasn't in front of him.  This is just another way of saying that the accident happened quickly, and that he was very close to the events.  It does not purport to be an accident reconstruction or offer a more scientific opinion.  In each case, the "opinion" is based on his perceptions, is more of a rhetorical device to express his perceptions, and does not purport to be a scientific or technical opinion.  Under Rule 701, this testimony is permissible.  Defendant's objections to the basis of Mr. Weiss' opinions can be explored in cross-examination.  See *Irving v. Agency of Transp.*, 172 Vt. 527, 529 (2001) (mem.).  For these reasons, Defendant's Motion in Limine is **Denied.**

### 12. *Defendant's Tenth Issue: Truck Repairs, Maintenance, Standards, and Training.*

The last argument raised by Defendant concerns the truck repairs, mechanical conditions, inspection, training, and supervision.  Plaintiff has narrowed this issue by stating that she does not intend to bring forward evidence of the plow truck's repairs, mechanical condition, or inspection.  Plaintiff states that she may seek evidence of Mr. Morris' training on the dangers of backing up and the lack of any city policy on backing-up.  This is largely consistent with the Court's prior rulings on this issue.  For these reasons, the Court **Grants** Defendant's motion on

these issues **in Part**, but it reserves on the issue of standards and training until trial and further development by Plaintiff.

## <u>ORDER</u>

Based on the Foregoing, Plaintiff's Motion in Limine and Defendant's Motion in Limine are **Granted in Part and Denied in Part** consistent with this decision.

In furtherance of this decision, the Court makes the following rulings:

A. Plaintiff's Second Issue: the parties shall not argue or present evidence that Mr. Morris had a different standard of care in backing out that would deviate from 23 V.S.A. § 1113.
B. Plaintiff's Fourth Issue: Defendant may not submit the investigating officer's police report to the jury without the Officer's testimony. V.R.E. 803(8)(B)(i)
C. Plaintiff's Sixth Issue: Defendant shall not put on evidence on Mr. Morris' general driving record.
D. Plaintiff's Seventh Issue: the parties shall not mention or reference Plaintiff's Medicare Liens during the jury trial.
E. Defendant's Fifth Issue: the parties shall refer to Plaintiff's expert by his full name, his first name, or with the title "Mr."
F. Defendant's Sixth Issue: No party shall submit their expert's report in lieu of or in addition to the expert witness' oral testimony.
G. Defendant's Eighth Issue: Plaintiff may not elicit or seek testimony on any impairment determination done for Plaintiff.
H. Defendant's Tenth Issue, Plaintiff may not elicit or seek to admit evidence concerning any repairs, inspections, or maintenance performed or not performed on the plow-truck.

Electronically signed on 5/4/2026 2:52 AM pursuant to V.R.E.F. 9(d)

_____
Daniel P. Richardson
Superior Court Judge